UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA

    - against -                              **MEMORANDUM AND ORDER**
                                     21-CR-193(KAM)
RICHARD DALE STERRITT, JR., et al.,

                *Defendants*.
----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

On April 8, 2021, a grand jury returned a five-count indictment (ECF No. 1) charging Richard Dale Sterritt, Jr. with conspiracy to commit securities fraud, wire fraud, and money laundering, and two substantive counts of securities fraud. On December 15, 2022, a grand jury returned a superseding indictment (ECF No. 177 (the "Superseding Indictment")) against Mr. Sterritt and others, charging Mr. Sterritt with the same offenses.

On October 7, 2023, the United States (the "Government") sent Mr. Sterritt a plea offer. As detailed herein, Mr. Sterritt's counsel discussed the plea offer with Mr. Sterritt. During an in-person discussion with two of Mr. Sterritt's three attorneys on October 13, 2023, Mr. Sterritt rejected the plea offer, instead exercising his right to proceed to trial. (ECF No. 431-2, Jacob Mitchell Declaration ("Mitchell Decl."), ¶¶ 4-7.) The plea offer expired on October 16, 2023. On November 1, 2023, Mr. Sterritt's attorneys sent him a letter in which they acknowledged his earlier rejection of the plea offer and presented several scenarios,

including a "best-case" scenario, which was not certain, if Mr. Sterritt pleaded guilty without an agreement and a "worst-case" scenario, which was also not certain, if Mr. Sterritt were to be convicted of all counts at trial.  The November 1, 2023 letter advised Mr. Sterritt to plead guilty without a plea agreement so that he could present arguments to lower his advisory sentence pursuant to the United States Sentencing Guidelines (the "Guidelines") and to preserve his appellate rights.  After receiving this letter, Mr. Sterritt maintained his earlier decision to proceed to trial on November 27, 2023.

On November 27, 2023, after a jury was selected for trial but before trial began, Mr. Sterritt advised the Court that he wished to plead guilty to all counts of the Superseding Indictment without a plea agreement.  Mr. Sterritt now moves to withdraw his guilty plea, arguing that he received ineffective assistance when considering the Government's October 7, 2023 plea offer, which he had rejected on October 13, 2023, three days before it expired.

Based on the Court's review of the parties' submissions, the case record, and the applicable law, for the reasons set forth more fully below, Mr. Sterritt's motion to withdraw his guilty plea is respectfully denied.  Applicable law governing Mr. Sterritt's motion requires him to establish deficient performance and prejudice.  Mr. Sterritt has not established prejudice, and his motion therefore fails.  In addition, the Court addresses Mr.

2

Sterritt's recent request that the Court appoint counsel after the Court conducted an extensive allocution with stand-by counsel and granted Mr. Sterritt's December 2024 request to relieve his eighth appointed attorney and proceed *pro se*.  Finally, the Court sets new dates for the parties to lodge objections to the Probation Department's Presentence Investigation Report ("PSR"), to file sentencing submissions, and for Mr. Sterritt's sentencing.

**BACKGROUND**

Resolution of a defendant's claim that he received ineffective assistance of counsel requires "fact-intensive" analysis.  *Custis v. United States*, 511 U.S. 485, 490, 497 (1994); *Greiner v. Wells*, 417 F.3d 305, 321 (2d Cir. 2005) ("we must make a careful examination of counsel's efforts on a case-by-case basis" (citation omitted)); *accord Lee v. United States*, 582 U.S. 357, 367 (2017) (prejudice inquiry "demands a case-by-case examination of the totality of the evidence" (internal quotation marks omitted; quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000); citing *Strickland v. Washington*, 466 U.S. 668, 695 (1984))).  The Court therefore reviews the background of the case in detail before discussing the merits of Mr. Sterritt's motion.

**A.    The Charges**

The Superseding Indictment charges Mr. Sterritt with one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 ("Count One"); one count of conspiracy to commit wire

fraud in violation of 18 U.S.C. § 1349 ("Count Two"); two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a) ("Counts Three and Four"); and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1957(a) ("Count Five"). Other individuals are charged with some of the same counts of the Superseding Indictment but are not discussed herein.

Extensive factual allegations are provided in the Superseding Indictment, which the Court previously described in its June 22, 2023 Memorandum and Order, *see United States v. Sterritt*, 678 F. Supp. 3d 317, 325–26 (E.D.N.Y. 2023), and briefly summarizes here. As alleged, between approximately March 2018 and January 2021, Mr. Sterritt controlled two companies—Zona Energy Inc. ("Zona" or "Zona Energy") and OrgHarvest Inc. ("ORGH")—and defrauded investors in these companies by, among other actions, using investor funds for personal expenses, and by concealing material facts such as his true name and prior conviction for conspiracy to commit securities fraud. *See Sterritt*, 678 F. Supp. 3d at 325. Investor funds were laundered through accounts maintained by one of Mr. Sterritt's codefendants. *Id.* at 325–36. Mr. Sterritt engaged in matched trades, i.e., coordinated trades at above-market prices to create the appearance of genuine demand at a higher price, to artificially inflate ORGH's share price. *Id.* at 326. In total, Mr. Sterritt and others allegedly conspired

to raise $16 million from over 300 victim-investors utilizing their fraudulent schemes. *Id.* at 325.

**B.    Plea Negotiations**

**1.    The Government's Offer**

On October 7 2023, the Government offered a proposed plea agreement to Mr. Sterritt which expired on October 16, 2023. (ECF No. 431-1 (the Government's "Proposed Plea Agreement" or "Plea Offer").)  The cover letter attaching the offer stated, "If your client rejects the plea offer and is convicted after trial, your client's sentencing exposure under the relevant statutes and Sentencing Guidelines is likely to be higher after trial than if the proposed plea agreement were to be entered." (*Id.*)  Under the terms of the Proposed Plea Agreement, Mr. Sterritt would plead guilty to Count Two, conspiracy to commit wire fraud.  (*Id.* ¶ 1.) In addition to pleading guilty to Count Two, the Plea Offer required Mr. Sterritt to stipulate and admit that he committed the conduct charged in Counts One, Three, Four, and Five of the Superseding Indictment for purposes of the Court's consideration in determining his sentence. (*Id.* ¶ 2.)

Paragraph three of the Proposed Plea Agreement stated, "The defendant understands that although the imposition of a sentence in accordance with the [Guidelines] is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors

enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case." (Proposed Plea Agreement ¶ 3.) The Guidelines offense level estimated by the Proposed Plea Agreement was 39 based on (i) a base offense level of 7 under Guidelines Section 2B1.1(a)(1); (ii) a 20-level increase due to a loss amount of between $9.5 million and $25 million under Guidelines Section 2B1.1(b)(1)(K); (iii) a 4-level increase because the offense resulted in substantial financial hardship to five or more victims under Guidelines Section 2B1.1(b)(2)(B); (iv) a 2-level increase because the offense involved sophisticated means under Guidelines Section 2B1.1(b)(10)(C); (v) a 4-level increase because the defendant was the leader of criminal activity involving five or more participants under Guidelines Section 3B1.1(a); and (vi) a 2-level increase due to willful obstruction of the administration of justice under Guidelines Section 3C1.1. (*Id.* ¶ 3.) After applying a 2-level reduction for acceptance of responsibility, the adjusted offense level was 37, which, based on Mr. Sterritt's expected criminal history category of II, would result in a Guidelines sentence of between 235 and 293 months' imprisonment. (*Id.*) Because the statutory maximum for Count Two is 240 months, the Guidelines range was adjusted to between 235 and 240 months. (*Id.*); *see also* Guidelines Section 5G1.1(c). The Proposed Plea Agreement included a provision providing that Mr. Sterritt would stipulate to the Government's Guidelines calculation yielding a

6

235-240 month term of imprisonment (Proposed Plea Agreement ¶ 3), but that this Guidelines calculation would not be binding on the Government, the Probation Department, or the Court (*id.* ¶ 4).

The Proposed Plea Agreement also provided that Mr. Sterritt would waive his right to appeal or challenge his conviction or sentence if he were to be sentenced to a term of imprisonment of 240 months or below. (*Id.* ¶ 5.) Finally, the Proposed Plea Agreement included criminal forfeiture provisions providing that Mr. Sterritt would consent to the entry of a $10,944,000 forfeiture money judgment. (*Id.* ¶¶ 7-12.) The forfeiture money judgment would "not be considered a payment of a fine, penalty, restitution loss amount, or any income taxes that may be due." (*Id.* ¶ 13.)

### 2. Defense Counsel's Advice

On October 13, 2023, before the October 16, 2023 expiration date in the Government's Plea Offer, two of Mr. Sterritt's three attorneys at that time, Jacob Mitchell and Stephanie Carvlin ("Former Counsel"[1]), met with Mr. Sterritt at the Metropolitan Detention Center in Brooklyn ("MDC") and showed him a copy of the Proposed Plea Agreement. (Mitchell Decl. ¶ 4.)

---

[1] Mr. Sterritt was also represented at this time in 2023 by a third attorney, Emilee Sahli. (Mitchell Decl. ¶ 1.) Ms. Sahli was not present at the October 13, 2023 meeting, and the current record does not reveal if she prepared or sent the November 1, 2023 letter providing advice concerning the Proposed Plea Agreement. (*See id.* ¶ 9 (describing the letter as one "that Ms. Carvlin and [Mr. Mitchell] sent to Mr. Sterritt").) Ms. Sahli is, therefore, excluded from the defined term "Former Counsel" for purposes of this Memorandum and Order.

After Mr. Sterritt had read the Proposed Plea Agreement, Mr. Mitchell and Ms. Carvlin discussed the details of the Proposed Plea Agreement with Mr. Sterritt.  (*Id.* ¶ 5.)  Mr. Sterritt immediately rejected the offer, telling Mr. Mitchell and Ms. Carvlin "that he was not interested in pleading guilty pursuant to the government's plea offer." (*Id.*)  Mr. Mitchell and Ms. Carvlin advised Mr. Sterritt that they "believed that it was in his best interest not to go to trial," that he "could plead guilty to the indictment without a plea agreement," and that they "believed that he should plead guilty." (*Id.* ¶ 6.)  Mr. Sterritt responded that he wanted to proceed to trial.  (*Id.* ¶ 7.)[2]  Thereafter, the Government's Proposed Plea Agreement expired on October 16, 2023. (ECF No. 431-1, at 2.)

On November 1, 2023, Mr. Mitchell and Ms. Carvlin sent Mr. Sterritt a detailed, seven page letter acknowledging that Mr. Sterritt had rejected the Plea Offer, summarizing their advice regarding the Plea Offer (even though that offer had expired on

_____

[2] Mr. Sterritt adds additional facts concerning this October 13, 2023 meeting. He does not dispute that he met with Mr. Mitchell and Ms. Carvlin to discuss the Proposed Plea Agreement on October 13, 2023, or that he rejected the Proposed Plea Agreement after discussing it with Former Counsel on that date.  Indeed, Mr. Sterritt confirmed during a pretrial conference on November 21, 2023 that he had "looked at [a copy of the Proposed Plea Agreement], reviewed it with his lawyer, and [] rejected the offer." (Nov. 21, 2023 Tr. at 166.)  Mr. Sterritt contends that during the October 13, 2023 meeting, "[t]here was no discussion of comparative sentences other than counsel's advice that accepting the plea would be the same as if [he] had been convicted after trial" and "virtually no discussion at all of the details [of the Plea Offer], with the exception of the sentencing range set forth in the proposed plea offer." (ECF No. 436, ¶ 5.)

October 16, 2023), and providing their views of various Guideline scenarios.   (Mitchell Decl. ¶ 8; ECF No. 430 (the "November 1, 2023 letter" or "Former Counsel's Letter").)   The November 1, 2023 letter provided four different Guidelines calculations, discussed, *infra*, in greater detail: (i) the Government's likely Guidelines calculation if Mr. Sterritt had pleaded guilty to Count Two and admitted to the conduct of all five counts of the Superseding Indictment, which the Court could consider "as if the defendant had been convicted of additional count(s) charging those offense(s)," under Guidelines Section 1B1.2(c); (ii) the Government's expected Guidelines analysis if Mr. Sterritt pleaded guilty to all five counts without a plea agreement; (iii) defense counsel's "[b]est-[c]ase [s]cenario" under the Guidelines if Mr. Sterritt pleaded guilty to all counts without a plea agreement and the defense succeeded in convincing the Court to accept a lower Guidelines calculation; and (iv) defense counsel's "[w]orst-case scenario" if Mr. Sterritt were "convicted of all counts after trial."   (Former Counsel's Letter at 4-10 (pin citations to this document refer to the pagination assigned by the Court's online CM/ECF system).)

The November 1, 2023 letter stated, "we strongly believe that you will be convicted at trial" and "that the evidence shows that you are guilty of the charged offenses." (*Id.* at 4.)   The letter further advised that although counsel "can NOT guarantee

what sentence you will receive (if convicted) under any scenario, we are extremely confident that you will get a substantially lower sentence if you plead guilty." (*Id.* (emphasis retained).)  Former Counsel's November 1, 2023 letter continued, "We agree with you that the government's plea offer amounts to virtually no offer at all and that you should (*you already have*) reject that plea offer." (*Id.* (emphasis added).)  The letter further stated, "we have also advised you that it is our opinion that your best chance of receiving the lowest sentence is to plead guilty without a plea agreement and let us make arguments to the judge about why she should give you a sentence far, far lower than the Guidelines range."  (*Id.* at 4–5.)  The November 1, 2023 letter provided a bulleted list of eight "strong arguments" that defense counsel could make to support a sentence below the advisory Guidelines range including, in part, Mr. Sterritt's family life, his "poor health," the "sophisticated" nature of investors in Mr. Sterritt's companies, the "real mineral lease" held by Mr. Sterritt, the "extremely harsh" conditions of Mr. Sterritt's confinement, and the way in which the fraud Guidelines "significantly overvalue the seriousness of fraud offenses." (*Id.* at 5.)  The November 1, 2023 letter also advised that by rejecting the Proposed Plea Agreement and instead pleading guilty without an agreement, Mr. Sterritt preserved his "right to appeal sentencing issues." (*Id.*)

The November 1, 2023 letter strongly advised Mr. Sterritt not to proceed to trial, not only because he would likely be convicted of all counts based on the strength of the Government's evidence, but also because of the negative impact that hearing victim testimony would have on the Court's assessment of the 18 U.S.C. § 3553(a) factors at sentencing and because Mr. Sterritt would have the opportunity to present "virtually any evidence that is 'reliable'" in advance of sentencing even if he did not proceed to trial. (*Id.* at 5-6.) The letter noted that Mr. Sterritt could request an evidentiary hearing on the loss amount attributable to the offenses charged. (*Id.* at 6.) The November 1, 2023 letter closed by advising Mr. Sterritt that he would be unwise to testify in his own defense at trial because of his difficulty focusing on specific issues and narrating stories in a linear manner. (*Id.*) Former Counsel advised Mr. Sterritt to consider their letter seriously and to review the Government's exhibits. (*Id.*)

As noted above, the November 1, 2023 letter provided additional analysis of how the Guidelines could be argued by either the Government or by Mr. Sterritt and depending on whether Mr. Sterritt had pleaded guilty pursuant to the Government's Proposed Plea Agreement (which had expired on October 16, 2023), pleaded guilty to the entire Superseding Indictment without an agreement, or if he were to be convicted at trial. (*Id.* at 7-10.) The letter

erroneously noted that "[a]ll counts carry a maximum term of incarceration of 20 years, which the Court may order run concurrently or consecutively." (*Id.* at 7.)[3]

The November 1, 2023 letter then provided the following sentencing analysis of four different scenarios. ***First***, if Mr. Sterritt were to plead guilty to Count Two in accordance with the terms of the (then-expired) Proposed Plea Agreement, the letter restated the Government's estimated Guidelines calculation in the expired Proposed Plea Agreement, i.e., that Mr. Sterritt's adjusted Guidelines offense level, including a 2-level reduction for acceptance of responsibility, would be 37 with a criminal history category of II, resulting in an advisory sentence of 235–293 months, adjusted to 235–240 months, to account for the twenty-year statutory maximum for Count Two, wire fraud conspiracy.[4]

***Second***, the November 1, 2023 letter stated that if Mr. Sterritt instead were to plead guilty to all counts of the Superseding Indictment without an agreement, the "Government's

---

[3] Although it is correct that the Court may order sentences on multiple counts to run concurrently or consecutively, *see* 18 U.S.C. § 3584, the November 1, 2023 letter incorrectly stated that all counts carried a twenty-year maximum term of incarceration. Counts Two, Three, and Four each carried a twenty-year maximum, but Count One carried a five-year maximum and Count Five carried a ten-year maximum. *See* 18 U.S.C. §§ 371 and 1957(b). Thus, the correct maximum carceral term on all five counts was seventy-five years.

[4] Mr. Sterritt could have pleaded guilty pursuant to the Proposed Plea Agreement, but had rejected that offer during his October 13, 2023 meeting with Former Counsel, as acknowledged in Former Counsel's November 1, 2023 letter, which was sent after the offer had expired. (Former Counsel's Letter at 4.)

[l]ikely [v]iew" of his adjusted Guidelines offense level, including a 2-level reduction for acceptance of responsibility, would be 39, with a criminal history category of II, resulting in an advisory sentence of 292–365 months, or between twenty-four and a third years and thirty years and five months. (*Id.* at 8.) This analysis considered the Guidelines rules on grouping of multiple counts and concluded that grouping would add no additional points, although 2 additional points would be added pursuant to Guidelines Section 2S1.1(b)(2)(B) because Mr. Sterritt would be convicted of § 1956 (Count Five). (*Id.*)[5] In this scenario, Mr. Sterritt would be convicted of all five counts of the Superseding Indictment, so the Guidelines range would not be reduced by operation of the statutory maximum for Count Two, as described in the first scenario. (*See* Former Counsel's Letter at 8 ("Not capped at 240 as in scenario 1 above.").)

**Third**, the November 1, 2023, letter provided what it called a "[b]est-[c]ase [s]cenario," if Mr. Sterritt were to plead guilty to all counts without a plea agreement and defense counsel succeeded with arguments to convince the Court to reduce the

---

[5] Although the November 1, 2023 letter provides for a 2-level enhancement pursuant to Guidelines Section 2S1.1(b)(2)(B), a Guideline which provides for such an enhancement "[i]f the defendant was convicted under 18 U.S.C. § 1956," Count Five of the Superseding Indictment in fact charges conduct "contrary to Title 18 United States Code Section 1957(a)." (Superseding Indictment ¶ 100.) (The Superseding Indictment cites § 1956(h) because that provision criminalizes conspiracy to commit an offense described in § 1957.) Guidelines Section 2S1.1(b)(2)(A), in turn, provides for only a 1-level increase if a defendant is convicted under § 1957.

advisory Guidelines calculations. (*Id.* at 9.) The letter estimated that if Mr. Sterritt could show that the loss amount for Guidelines purposes was between $550,000 and $1,500,000 and that his victims did not suffer substantial financial hardship, then his adjusted offense level would be reduced from 37 or 39 in the first two scenarios down to 29, resulting in a sentencing range for criminal history category II of 97–121 months, or approximately eight to ten years. (*Id.*) The reduction in offense level in this "best case" scenario resulted from a 6-point reduction in loss amount. Instead of the Government's view, utilizing Guidelines Section 2B1.1(b)(1)(K), for loss amounts greater than $9,500,000 but less than $25,000,000, resulting in 20 additional points, this "best case" scenario by defense counsel, utilizing Guidelines Section 2B1.1(b)(1)(H), for loss amounts greater than $550,000 but less than $1,500,000, would result in 14 additional points. In addition, Former Counsel intended to advocate for a 4-point reduction (as compared to the previous scenarios) as a result of convincing the Court not to apply Guidelines Section 2B1.1(b)(2)(B) (the 4-point enhancement that applies if the offense resulted in "substantial financial hardship to five or more victims"). (*Compare id.* at 8 ("Government's Likely View of the Guidelines if the Client Pleads 'Open' – to All Counts") *with id.* at 9 ("Our View of the Best-Case Scenario [I]f Client Pleads Guilty Without a Plea Agreement – Open Plea").)

*Finally*, the November 1, 2023 letter provided a "[w]orst-case scenario" if Mr. Sterritt were to be convicted of all counts after trial. (*Id.* at 10.)  It calculated a Guidelines offense level of 37 resulting in a Guidelines sentence of 235–293 months.  (*Id.*)  The Guidelines calculation resulting in an offense level of 37 was the same as the calculation in scenario two (the Government's likely Guidelines calculation in the event of a guilty plea to all counts without an agreement) except that this scenario added 2 levels back to reflect that if Mr. Sterritt proceeded to trial, he would not receive a 2-level reduction for acceptance of responsibility, and deducted an additional 4 levels because it "assumes that we successfully contest an enhancement for substantial financial harm to five or more victims." (*Id.*)  The letter's analysis of this scenario also noted, however, that if the Government could establish the 4-level enhancement for causing substantial financial harm to five or more victims, the offense level would increase to 41 and the Guidelines range would correspondingly increase to a sentence of 360 months to life. (*Id.*)

Thus, the November 1, 2023 letter provided a spectrum of possible outcomes between, on the one hand, a worst case scenario that could result in a Guidelines sentencing range of a term of imprisonment of 360 months to life if Mr. Sterritt were to be convicted of all counts after trial and, on the other hand, a best

15

case scenario that could result in a Guidelines sentencing range of 97 to 121 months if Mr. Sterritt elected to plead guilty to all counts without an agreement and convinced the Court that certain Guidelines enhancements urged by the Government should not apply. Having been so advised, Mr. Sterritt opted for what his Former Counsel characterized as the "[w]orst-case scenario" and again elected to proceed to trial.

For approximately six weeks from when he decided to reject the Government's Proposed Plea Agreement after meeting with his counsel on October 13, 2023, until the afternoon of November 27, 2023, after the jury for his trial had been selected, Mr. Sterritt gave every indication that he was intent on exercising his constitutional right to trial, and all parties and the Court proceeded based on that understanding. It was during this six-week window that the parties briefed, and the Court decided, various pretrial motions and motions *in limine*. (*See* ECF No. 258 (Government's July 21, 2023 motions *in limine*); ECF No. 304 (Mr. Sterritt's letter briefing on advice-of-counsel defense); ECF No. 319 (Mr. Sterritt's October 25, 2023 letter seeking to admit additional portions of Government tape recording and transcripts pursuant to Federal Rule of Evidence 106); ECF No. 322 (Government's November 1, 2023 motions *in limine*); ECF No. 326 (Memorandum and Order on pretrial and *in limine* motions); Nov. 22, 2023 Text Order (resolving additional evidentiary disputes).)

16

### C.   Mr. Sterritt's Guilty Plea on the First Day of Trial

After Mr. Sterritt rejected the Proposed Plea Agreement at his meeting with Former Counsel on October 13, 2023, after the Proposed Plea Agreement had expired on October 16, 2023, and after all pretrial and *in limine* motions had been briefed and decided, the parties appeared for jury selection and trial on November 27, 2023.  After a jury and alternates were selected for his trial but before the jurors were sworn, Mr. Sterritt, with his three attorneys present, pleaded guilty to all five counts of the Superseding Indictment without an agreement.  He was placed under oath and stated that his mind was clear, he "had sufficient time to discuss [his] decision to plead guilty with [his] lawyers," and that his attorneys had provided him with "a two-page document that had three or four different scenarios."  (Nov. 27, 2023 Plea Tr. at 7, 11.)  Mr. Sterritt stated that he "want[ed] to plead guilty," that he discussed his case and "the ups and downs" of pleading guilty with his attorneys, and that he was "satisfied with [his] lawyer's representation."  (*Id.* at 11–12.)  He stated that he understood his rights including his right to persist in his plea of not guilty, his right to a speedy and public trial represented by counsel, and his right to put the Government to its burden to overcome his presumption of innocence and to prove each element of every charge beyond a reasonable doubt. (*Id.* at 13–19.)  The Court correctly advised Mr. Sterritt of, and he confirmed his

17

understanding of, the statutory maximum terms of imprisonment and other penalties carried by each count of the Superseding Indictment. The Court further advised Mr. Sterritt that the statutory maximum sentences could be imposed consecutively. (*Id.* at 19-30.)[6]

The Court also advised Mr. Sterritt of the provisional Guidelines estimate provided by the Government, noting that although the Court would independently calculate the Guidelines at sentencing, the Government's estimate for all five counts resulted in an offense level of 40,[7] before considering any reduction for acceptance of responsibility, which when considered with Mr. Sterritt's estimated criminal history category of II, resulted in an advisory Guidelines range of imprisonment of 324-405 months. (Nov. 27, 2023 Plea Tr. at 31-33.) Mr. Sterritt stated that he understood the Government's Guidelines estimate for all five

---

[6] Based on the Government's penalty sheet, the Court initially advised Mr. Sterritt that Count Five, money laundering conspiracy, carried a twenty-year maximum term of imprisonment (*id.* at 26), but later advised that the correct statutory maximum term was ten years' imprisonment (*id.* at 30 ("MS. EVANS: -- we did notice an error in the penalty sheet we sent you. For the money laundering count, the statutory maximum is actually ten years because it's a 1956(h) conspiracy to commit a violation of 1957(a). So it should actually be a ten year statutory cap. I believe you probably read from our penalty sheet. THE COURT: I did. And my clerk got it right. All right. [My clerk] had [noted] a ten year maximum for a violation of 18 U.S. Code, Section 1957, 1956(h), and 3551.")).

[7] The Guidelines estimate provided by the Government for purposes of the November 27, 2023 change-of-plea hearing differed from the Guidelines estimate in the Government's October 7, 2023 Proposed Plea Agreement in that it properly accounted for all counts of the Superseding Indictment by adding one additional offense-level point pursuant to Guidelines Section 2S1.1(b)(2)(1) because Mr. Sterritt "will have been convicted of a Section 1957 violation." (Nov. 27, 2023 Plea Tr. at 31); *see* Guidelines Section 2S1.1(b)(2)(A).

counts. (*Id.* at 33.) The Court asked Former Counsel whether they agreed with the Government's Guidelines estimate, to which Former Counsel responded that "we understand the government's estimate" and "[w]e intend to argue a number of the enhancements and we've discussed all of this with Mr. Sterritt." (*Id.*) The Court then advised Mr. Sterritt:

> [U]ltimately, you'll have the right to object to the guidelines calculations. Whether or not Probation will come out the same way is hard to predict. Many times Probation . . . , in the presentence report, will calculate the guidelines and then both the government and the defendant will have the opportunity to object to that calculation. And, ultimately, sir, I will be in charge and have the responsibility to calculate your guidelines and once I do that, I have the authority to impose a sentence that is more severe or less severe than that called for by the guidelines.

(*Id.* at 34.) Mr. Sterritt affirmed that he understood. (*Id.*)

Mr. Sterritt then pleaded guilty to all five counts of the Superseding Indictment, and allocuted as follows: **As to Count One**, conspiracy to commit securities fraud, Mr. Sterritt allocuted in pertinent part that "[i]n March 2018 to January 2021 [*sic*], with others, [he] engaged in acts, practices and a course of business that operated as a fraud on investors in connection with the sale of Org[h] and Zona shares." (*Id.* at 39–40.) He stated that he used emails and telephone calls with investors in furtherance of the conspiracy and that he "worked with" individuals who, he would later learn, were undercover agents from the Federal

19

Bureau of Investigation.  (*Id.* at 40.)  He stated that he concealed from potential investors (i) his true identity and (ii) that he previously had been convicted of securities fraud, tax violations, and other tax fraud.  (*Id.* at 44–45.)  He admitted that he used investor money for his own personal purposes.  (*Id.* at 47–50.) Mr. Sterritt stated that in connection with Count One, he had a telephone conversation with a victim ("K.D."), whom Mr. Sterritt "assume[d]" and the Government proffered was located in the Eastern District of New York.  (*See id.* at 55.)

Mr. Sterritt stipulated that the Government could prove three overt acts (enumerated "M," "N," and "O") in the Superseding Indictment, all relating to matched trades of ORGH stock.  (*Id.* at 50–56.)  Overt act "M" in the Superseding Indictment states, "On or about May 19, 2020, [Robert] Magness, Co-Conspirator 3 and [an] Undercover Agent completed a pre-arranged matched trade of ORGH shares"; overt act "N" in the Superseding Indictment states, "On or about May 26, 2020, STERRITT and [Michael] Greer sent a wire payment of $2,650 to the Undercover Agent at a bank account in the Eastern District of New York as a kickback for engaging in the ORGH matched trading scheme"; and overt act "O" in the Superseding Indictment states, "On or about May 28, 2020, Magness, Co-Conspirator 3 and the Undercover Agent completed a matched  trade of ORGH shares, which STERRITT later confirmed with the Undercover Agent."  (Superseding Indictment ¶ 92(m)-(o).)

**As to Count Two**, conspiracy to commit wire fraud, Mr. Sterritt allocuted in pertinent part that he "agreed with other people to engage in a scheme to defraud one or more investors in Zona or OrgHarvest to obtain money and property by omitting a material fact and not telling investors that [his] real name was Richard Dale Sterritt and [he] did not disclose that [he] had a prior conviction for conspiracy to commit securities fraud." (Nov. 27, 2023 Plea Tr. at 53–54.) He stated that he transmitted communications by means of the telephone and "maybe a text message" in executing the scheme, that he believed those wire communications crossed state or international lines, and that some of those communications came into the Eastern District of New York, including via his communications with one victim, K.D. (*Id.* at 54–56.) Mr. Sterritt also stated that he actively concealed his true name and criminal history with respect to the wire fraud conspiracy charged in Count Two. (*Id.* at 56.)

**As to Count Three**, securities fraud involving Zona Energy, Mr. Sterritt allocuted in pertinent part that he "engaged in acts, practices and a course of business that operated as a fraud on investors in connection with the sale of Zona's shares of stock," including by actively concealing his real name and criminal history from investors. (*Id.* at 57.) The Court again confirmed that K.D. was an investor in Zona from this District. (*See id.*)

21

**As to Count Four**, securities fraud involving ORGH, Mr. Sterritt allocuted in pertinent part that he "engaged in acts, practices and a course of business that operated as a fraud from February 2020 to June 2020 in connection with the sale of OrgHarvest shares," including by coordinating the sale of matched trades with an undercover agent. (*Id.* at 58.) Mr. Sterritt stated that the undercover agent told him he was in New York and had stockbrokers located in Brooklyn. (*Id.*)

**Finally, as to Count Five**, conspiracy to commit money laundering of the proceeds of his criminal acts, Mr. Sterritt allocuted in pertinent part that he "agreed with others to engage in money laundering by causing wires to be made with the proceeds of money that was received from the sale of Zona Energy shares," and that he received those proceeds by concealing his true name and criminal history. (*Id.* at 59-62.) He stated that he "knew that the money came from investors as a result of misrepresentations and omissions [he] made in connection with selling shares of Zona Energy Corporation." (*Id.* at 60.)

The Court found, based on Mr. Sterritt's sworn statements, that he was acting knowingly and voluntarily, with a full understanding of his rights and the consequences of his plea, including knowledge of his sentencing exposure, and that there was a factual basis for his guilty plea to all five counts of the Superseding Indictment. (*Id.* at 65.) The Court therefore accepted

Mr. Sterritt's guilty plea to all counts and scheduled his sentencing for March 13, 2024.  (*Id.*)

### D.   Mr. Sterritt's Eight Former Attorneys

Over the course of this action, the Court has appointed eight attorneys to represent Mr. Sterritt, and briefly appointed a ninth attorney as standby counsel for purposes of a hearing on Mr. Sterritt's request to proceed *pro se*.  While represented, Mr. Sterritt has occasionally written and submitted *pro se* letters to the Court complaining about his attorneys.  In response to Mr. Sterritt's *pro se* letters and his requests to relieve his attorneys (and his attorneys' requests to be relieved), the Court scheduled conferences with Mr. Sterritt, his appointed counsel, and the Government, and at these conferences appointed new counsel or, most recently on December 13, 2024, permitted Mr. Sterritt to proceed *pro se*.  Repeatedly relieving counsel has substantially delayed the progress of this case, including by delaying Mr. Sterritt's trial until November 27, 2023, and his sentencing, which was originally scheduled for March 13, 2024.  A brief history of Mr. Sterritt's representation in this case is provided below.

### 1.   Gerald Di Chiara

On April 24, 2021, after Mr. Sterritt was indicted but before he was arraigned, Gerald Di Chiara, Esq., appeared as Mr. Sterritt's defense counsel.  (ECF No. 26 (appearance of Mr. Di Chiara); ECF No. 35 (minute entry of arraignment).)

23

### 2.   Dawn Cardi and Diane Ferrone

On June 30, 2021, Mr. Di Chiara sought to withdraw after learning that Mr. Sterritt was not vaccinated and did not intend to become vaccinated, which placed Mr. Di Chiara at risk of adverse health consequences.  (ECF No. 64.)  By July 1, 2021, the Court had granted Mr. Di Chiara's motion to withdraw and appointed Dawn Cardi, Esq., to represent Mr. Sterritt (as his second attorney in this action).  (June 30, 2021 Text Order (granting motion to withdraw); ECF No. 68 (appointing Ms. Cardi).)  On January 3, 2022, the Court granted Ms. Cardi's motion to appoint Diane Ferrone, Esq., as associate counsel (and Mr. Sterritt's third attorney in this action) due to the complexity of the case and volume of discovery.  (ECF No. 99.)

### 3.   Jacob Mitchell, Stephanie Carvlin, and Emilee Sahli

On September 2, 2022, Ms. Cardi requested that she and Ms. Ferrone be relieved, stating that the attorney-client relationship between counsel and Mr. Sterritt was irreparably damaged at a recent meeting.  (ECF No. 137.)  The Court promptly scheduled a conference for September 13, 2022 to address the request, at which conference the Court granted Ms. Cardi's request that she and Ms. Ferrone be permitted to withdraw, and appointed Jacob Mitchell, Esq., to represent Mr. Sterritt (as his fourth attorney in this action).  (Sept. 13, 2022 Min. Entry.)  On September 27, 2022, the Court granted Mr. Mitchell's request to

appoint Stephanie Carvlin, Esq., as associate counsel (and Mr. Sterritt's fifth attorney in this action). (ECF No. 149.) On July 13, 2023, the Court granted defense counsel's request to appoint Emilee Sahli, Esq., as associate counsel (and Mr. Sterritt's sixth attorney in this action). (ECF No. 246.) The appointment of additional associate counsel was warranted to facilitate preparation for trial, which at that time was scheduled to commence on November 27, 2023 (ECF No. 224 (scheduling order)), and due to the complexity of the case and volume of discovery. These three attorneys, who had appeared for trial, also appeared for Mr. Sterritt's guilty plea on November 27, 2023.

### 4.    Jeremy Gutman

On May 15, 2024, Mr. Mitchell requested that he, Ms. Carvlin, and Ms. Sahli, be permitted to withdraw as counsel for Mr. Sterritt due to "a complete breakdown of communication between Mr. Sterritt and us that makes it impossible for us to represent him effectively." (ECF No. 376.) The Court promptly scheduled a conference for May 20, 2024, at which conference the Court permitted Mr. Mitchell, Ms. Carvlin, and Ms. Sahli to withdraw and appointed Jeremy Gutman, Esq., to represent Mr. Sterritt (as his seventh attorney in this action). (May 20, 2024 Min. Entry; ECF No. 378.) To provide Mr. Gutman time to review Mr. Sterritt's

case and prepare for sentencing, the Court adjourned sentencing from July 29, 2024 to September 16, 2024.  (*Id.*)[8]

### 5.  **Gary Cutler**

Ten weeks later, on July 31, 2024, Mr. Gutman moved to withdraw as Mr. Sterritt's counsel due to "fundamental and irreconcilable differences" between himself and Mr. Sterritt. (ECF No. 392.)  Mr. Sterritt also submitted a *pro se* letter to the Court dated August 1, 2024 in which he sought have Mr. Gutman relieved and to proceed *pro se*, and stated his intention to move to withdraw his guilty plea due to allegedly ineffective assistance of counsel.  (ECF No. 400.)[9]  The Court promptly scheduled a conference for August 9, 2024, to address these issues.  (Aug. 1, 2024 Text Order.)

During the August 9, 2024 conference, the Court noted that Mr. Gutman was Mr. Sterritt's seventh attorney and that continued changes in Mr. Sterritt's representation would lead to further delays in the case.  (Aug. 9, 2024 Tr. at 3.)  The Court noted that it had nonetheless arranged for Gary Cutler, Esq., to attend the conference and to be appointed as Mr. Sterritt's eighth

---

[8] Sentencing previously had been adjourned from March 13, 2024 until July 29, 2024 to afford the Probation Department adequate time to prepare a Presentence Investigation Report.  (*See* Feb. 5, 2024 Text Order; ECF No. 355.)

[9] Mr. Sterritt's August 1, 2024 letter does not itself constitute a motion to withdraw his guilty plea.  Instead, Mr. Sterritt requested to proceed *pro se* so that Mr. Sterritt could file a motion to withdraw his guilty plea because Mr. Gutman had apparently declined to file such a motion.

attorney in this case, although the Court advised Mr. Sterritt that it was unlikely to appoint further counsel. (*Id.* at 4, 6.) Mr. Sterritt then stated that he wished to proceed *pro se*. (*Id.* at 6.) The Court advised Mr. Sterritt of the risks of proceeding *pro se* and encouraged him not to proceed *pro se*. (*Id.* at 6–9.) The Court noted that if he elected to be represented by Mr. Cutler, Mr. Cutler might not file the motions to withdraw that Mr. Sterritt wanted if, in Mr. Cutler's opinion, the motion would be frivolous. (*Id.* at 9.) Mr. Sterritt responded, "I'll go ahead and take your advice and go with Mr. Cutler for now." (*Id.*) Thus, Mr. Cutler was appointed to represent Mr. Sterritt (as his eighth attorney in this action).

To provide Mr. Cutler with time to review Mr. Sterritt's case file and to prepare for sentencing, the Court adjourned sentencing from September 16, 2024 to November 20, 2024. (*Id.* at 13.) Sentencing was later adjourned to December 18, 2024 by joint request of the parties. (ECF No. 415.)

### 6. **Mr. Sterritt's Request to Proceed *Pro Se***

Mr. Cutler filed objections to the PSR on September 23, 2024 (ECF No. 413) in which he objected to the PSR's calculation of the intended loss amount for purposes of determining the advisory Guidelines (*id.* at 1–2), and objected to a 2-level enhancement for the use of sophisticated means (*id.* at 2). Mr. Cutler shared copies of these PSR objections with Mr. Sterritt.

27

(*See* Dec. 13, 2024 Tr. at 12–13 ("MR. CUTLER: . . . I mailed the PSR to Mr. Sterritt on September 16[,] [2024] and I mailed my objections to him well before he went into the hospital on October 21[,] [2024].").)  Mr. Sterritt, however, has not filed either counseled or *pro se* sentencing materials, such as a sentencing memorandum with his sentencing position and letters of support, for the Court's consideration in calculating his Guidelines or considering the application of the sentencing factors set forth at 18 U.S.C. § 3553(a).

Mr. Sterritt thereafter submitted a letter dated December 2, 2024 in which he requested, among other things, to relieve Mr. Cutler and proceed *pro se*.  (ECF No. 425.)[10]  The Court promptly held a conference on December 13, 2024 to address Mr. Sterritt's letter and his request to proceed *pro se*.  During the December 13, 2024 conference, Mr. Sterritt renewed his request to proceed *pro se*, which Mr. Cutler did not oppose.  (*See* Dec. 13, 2024 Min. Entry; Dec. 13, 2024 Tr. at 17 ("MR. CUTLER: Judge, I can't work with Mr. Sterritt any longer.").)  The Court appointed standby counsel to consult with Mr. Sterritt regarding his request to proceed *pro se*, placed Mr. Sterritt under oath and advised him

---

[10] As noted above, Mr. Sterritt previously had filed a *pro se* letter dated August 1, 2024 requesting to proceed *pro se*, but he withdrew his request to proceed *pro se* after the Court advised him of the risks of proceeding *pro se* at an August 9, 2024 conference, and he chose to accept the appointment of Mr. Cutler after the motions of Mr. Gutman and Mr. Sterritt were resolved.

of the reasons that proceeding *pro se* would not likely serve his best interest. (Dec. 13, 2024 Min. Entry.) After being appropriately cautioned of the risks of proceeding *pro se*, and after an extended colloquy pursuant to *Faretta v. California*, 422 U.S. 806 (1975), during which Mr. Sterritt repeatedly affirmed that he understood the risks of proceeding *pro se*, and during which the Court repeatedly provided Mr. Sterritt with the opportunity to confer privately with standby counsel, the Court found that Mr. Sterritt knowingly and voluntarily waived his right to counsel and granted Mr. Sterritt's request to proceed *pro se* both for purposes of his instant motion to withdraw his plea, for his sentencing, and for the duration of this case.[11]

---

[11] (*See* Dec. 13, 2024 Min. Entry.) The Court engaged Mr. Sterritt in an extended colloquy to emphasize his lack of familiarity with the Guidelines, sentencing statutes, and caselaw. Illustrative excerpts are provided in this footnote.

> THE COURT: The concern I have for you, Mr. Sterritt, is that you are placing yourself at risk if you do proceed *pro se* because you do not know what arguments would be appropriate under [the] law, how the guidelines would be considered under the law, and how the statutory sentencing factors may be considered and what the Second Circuit has said about sentencings of individuals who have been charged and convicted of similar crimes. You also may not be aware of how your prior criminal history for similar conduct may weigh in or may be factored in evaluating your sentence. [. . . .] Do you understand?

> THE DEFENDANT: Yes, ma'am.

Dec. 13, 2024 Tr. at 33–34.

> THE COURT: Do you also understand that if you do proceed *pro se* you will be, in effect, on your own in terms of the sentencing and in terms of your motion to withdraw your guilty plea. Do you understand?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Have you had experience with the sentencing guidelines?

THE DEFENDANT:  Not really.

*Id.* at 35.

THE COURT: . . . You're not familiar with the intricacies of the criminal code, the case law, and the advisory guidelines.  Certain enhancements may be applied in calculating your advisory guidelines and certain deductions to which you may be entitled may apply but you may not know to ask for those reductions. And you will not know what arguments to make given the fact that you're not trained and experienced in criminal law and it would be very difficult for someone not trained in criminal practice to make arguments that may be in his or her best interest and that is why you have the constitutional right to an attorney.

*Id.* at 38–39.

THE COURT:  Have you ever studied law or take[n] any law classes, sir?

THE DEFENDANT:  I took business law in college.

THE COURT:  All right.  Have you ever represented yourself in a criminal case?

THE DEFENDANT:  No, ma'am.

*Id.* at 43.

THE COURT:  You are familiar with the Federal Rules of Criminal Procedure?

THE DEFENDANT:  I've read it in prison.

THE COURT:  All right.  That's great and I'm glad you have access to [those rules].  An attorney, especially one from the CJA [Criminal Justice Act] panel . . . understands and knows how to use [those rules] to the best advantage of their client.  Do you understand?

THE DEFENDANT:  Yes, ma'am.

*Id.* at 45

THE COURT: . . . I believe it is unwise for you to try to represent yourself at . . . this critical juncture of your criminal case which is the sentencing phase. You, frankly, are just not as familiar with the law, despite your best efforts, as a CJA attorney would be. You are not familiar with the Court procedure and you're

To afford Mr. Sterritt with the opportunity to further brief his motion to withdraw his guilty plea and for the Government to respond, the Court set a briefing schedule for the motion and adjourned Mr. Sterritt's sentencing *sine die*. (*See* Dec. 13, 2024 Min. Entry.)

**LEGAL STANDARD**

The Sixth Amendment guarantees criminal defendants the assistance of effective counsel. *See, e.g.*, *Strickland*, 466 U.S. at 685. This right extends to all "critical stages" of criminal proceedings "after the initiation of formal charges." *See United States v. Gordon*, 156 F.3d 376, 379–80 (2d Cir. 1998) (per curiam) (quoting *Moran v. Burbine*, 475 U.S. 412, 431 (1986)). A plea offer is among the "critical stages" when a defendant is entitled to constitutionally effective assistance. *See id.*; *United States v. Graham*, 51 F.4th 67, 77 (2d Cir. 2022) (citing *Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012)). The standards for evaluating

---

not familiar with the Federal Rules of Criminal Procedure. So my view is that you should not represent yourself. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: In light of the penalties that you would face, that you do face, and in light of the difficulties that I've outlined in representing yourself, do you still wish to represent yourself and give up your right to be represented by an attorney?

THE DEFENDANT: Yes, ma'am.

*Id.* at 49–50.

ineffective-assistance claims in this context are further addressed below.

Ineffective-assistance claims are typically considered either on direct appeal or in a subsequent petition for writ of habeas corpus or motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. *See United States v. Lloyd*, 901 F.3d 111, 124-25 (2d Cir. 2018). But "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." *United States v. Brown*, 623 F.3d 104, 113 (2d Cir. 2010) (concluding, on facts of that case, that "district court should have considered [defendant's] [ineffective-assistance] claim prior to the imposition of the sentence"); *see also United States v. Ashburn*, No. 11-cr-303(NGG), 2015 WL 2179794, at *8-12 (E.D.N.Y. May 8, 2015) (denying ineffective assistance claim without an evidentiary hearing after trial but before sentencing).

Rather than delay consideration of the issues raised in Mr. Sterritt's motion until after he is sentenced, his direct appeal, or a motion pursuant to 28 U.S.C. § 2255, the Court will address Mr. Sterritt's ineffective-assistance claim now, before he is sentenced. The Court finds that the current record permits a decision on Mr. Sterritt's motion, and that rendering a decision

now is in the interests of Mr. Sterritt, his victims, the Government, and in the interest of judicial economy.

### DISCUSSION

As a threshold matter, Mr. Sterritt wisely does not argue that the guilty plea that he entered on November 27, 2023 was unknowing, involuntary, or unsupported by sufficient factual bases as to each of the five counts of the Superseding Indictment. The change-of-plea colloquy conducted by the Court on that date was extensive and confirmed that Mr. Sterritt was aware of and understood the charges, his rights, and the penal ramifications of his plea, including *inter alia*, financial penalties, the statutory maximum terms of imprisonment that could be imposed on each of the counts to which he pleaded guilty, and that those maximums could be imposed to run consecutively. The Court confirms, as it did on November 27, 2023, that Mr. Sterritt's allocution to all counts of the Superseding Indictment was sufficient to establish his guilt and that his guilty plea was properly accepted.

Mr. Sterritt instead argues that, even though his November 27, 2023 guilty plea was itself proper, he should still be given the opportunity to withdraw that plea because he was ineffectively advised when considering and rejecting an earlier plea offer by the Government. Specifically, Mr. Sterritt argues that his Former Counsel ineffectively assisted him in considering the Proposed Plea Agreement by advising him incorrectly of his

33

sentencing exposure if he were (a) to proceed to trial and risk being convicted on all counts, as he initially opted to do from October 13, 2023 until the afternoon of November 27, 2023, or (b) to plead guilty to all counts of the Superseding Indictment without a plea agreement, as he later opted to do on November 27, 2023, after a jury and alternates were selected for his trial.  Mr. Sterritt argues that, but for this allegedly ineffective advice, he would have accepted the Proposed Plea Agreement.

For reasons summarized immediately below and set forth more fully herein, Mr. Sterritt has not established that his Former Counsel's allegedly ineffective assistance caused him to suffer prejudice, and the Court therefore respectfully denies his motion.

To prove ineffective assistance, Mr. Sterritt must show both deficient performance and prejudice.  Mr. Sterritt raises three principal grounds, which the Court will discuss herein, that he contends satisfy both elements; none are availing.  Only one of Mr. Sterritt's three principal grounds presents a colorable argument as to the sufficiency of Former Counsel's performance: Specifically, Mr. Sterritt's Former Counsel accurately advised Mr. Sterritt of the maximum twenty-year term of imprisonment and other penalties, including restitution, a fine, and an assessment, if he pleaded guilty to Count Two (wire fraud conspiracy in violation of 18 U.S.C. § 1349), as provided in the Plea Offer.  Former Counsel also correctly advised Mr. Sterritt of the twenty-year statutory

34

maximum terms of imprisonment carried by Counts Three and Four (securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a)). Nonetheless, Former Counsel incorrectly advised Mr. Sterritt that Count One (conspiracy to commit securities fraud in violation of 18 U.S.C. § 371) carried a statutory maximum term of imprisonment of twenty years, when in fact it carried a statutory maximum term of imprisonment of five years, and that Count Five (conspiracy to commit money laundering in violation of 18 U.S.C. § 1957(a)) also carried a statutory maximum term of imprisonment of twenty years, when in fact it carried a statutory maximum term of imprisonment of ten years.

Assuming, without deciding, that this ground establishes deficient performance, the Court finds that Mr. Sterritt suffered no prejudice based on this ground.  Nor did he suffer prejudice based on any of the additional principal grounds that he raises, because Former Counsel's overstatement of Mr. Sterritt's maximum statutory sentencing exposure made the Plea Offer, which he had rejected, appear more beneficial, and, in any event, the record reveals that Mr. Sterritt was intent on rejecting the Plea Offer and proceeding to trial despite Former Counsel's strong advice not to proceed to trial.

## I.    Ineffective Assistance

"[T]here is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977); *accord United*

*States v. Malachowski*, 623 F. App'x 562, 564 (2d Cir. 2015) (citing *Weatherford*, 429 U.S. at 561). Even so, once a plea offer "has been made, a defendant is entitled to the advice of competent counsel before rejecting the offer or letting it expire." *Graham*, 51 F.4th at 77 (citing *Lafler*, 566 U.S. at 163–64); *see also Gordon*, 156 F.3d at 379–80 (noting Sixth Amendment right to counsel attaches at all critical stages following the initiation of formal charges, including plea negotiations).

Where, as here, a defendant asserts that ineffective assistance of counsel led him to reject a plea offer that he now claims he would have accepted, "[a]n inquiry into whether the rejection of a plea is knowing and voluntary . . . is not the correct means by which to address a claim of ineffective assistance of counsel." *Lafler*, 566 U.S. at 173 (citation omitted). Instead, counsel's assistance during plea negotiations should be evaluated under the Supreme Court's two-part standard for ineffective assistance of counsel, as originally described in *Strickland v. Washington*, 466 U.S. 668, 685 (1984). *See Lafler*, 566 U.S. at 162–63, 173–74 (citations omitted).

Under *Strickland*, a defendant claiming ineffective assistance must show both (i) that defense counsel's representation fell below objective standards of reasonableness ("deficient performance"), and (ii) that there is a reasonable probability that, but for counsel's unprofessional errors, the

36

result of the proceeding would have been different ("prejudice"). *See, e.g., Thornell v. Jones*, 602 U.S. 154, 163 (2024); *Garza v. Idaho*, 586 U.S. 232, 237 (2019); *Lee*, 582 U.S. at 363.

Mr. Sterritt raises several grounds of alleged ineffective assistance. **First**, as noted above, Mr. Sterritt contends that his Former Counsel misstated the statutory maximum terms of imprisonment that would apply to two of the five counts of the Superseding Indictment and provided "misinformation regarding the . . . sentencing guidelines." (*See* ECF No. 425, letter motion dated December 2, 2024 ("Mot."), at 2; ECF No. 430, supplemental submission dated December 15, 2024 ("Suppl. Mot."), at 2; ECF No. 436, reply declaration dated January 20, 2025 ("Reply"), ¶¶ 5, 7.) **Second**, Mr. Sterritt contends that Former Counsel should have advised him to accept the Plea Offer instead of advising him to plead guilty to all charges in the Superseding Indictment. (*See* Mot. at 2; Suppl. Mot. at 2; Reply ¶ 7.) **Third**, Mr. Sterritt contends that Former Counsel failed to advise him of "additional financial penalties" to which he was exposed by pleading guilty without an agreement. (Suppl. Mot. at 2.) **Finally**, Mr. Sterritt raises additional grounds in his supplemental submission and reply, including that Former Counsel advised Mr. Sterritt that accepting the Plea Offer was tantamount to a conviction after trial. The Court will consider each alleged deficiency in turn and decide, as to each, whether defense

37

counsel's performance was deficient and whether Mr. Sterritt was prejudiced by the alleged deficiency.  For the reasons set forth below, none of the grounds raised by Mr. Sterritt are availing.

### A.    Ground One:  Misstatement of Statutory Maximum Terms and Advice Concerning the Guidelines

Mr. Sterritt's first asserted ground for his ineffective-assistance claim is that by providing him with an inaccurate overstatement of the statutory maximum carceral terms carried by Count One and Count Five, Former Counsel's assistance was deficient.  As established by Former Counsel's January 7, 2025 declaration (ECF No. 431-2) and November 1, 2023 letter (ECF No. 430 at 4-10), which Mr. Sterritt received, Former Counsel substantially satisfied their obligation to provide effective assistance during plea negotiations, with the possible exception that by overstating Mr. Sterritt's sentencing exposure, counsel may have failed to satisfy the usual obligation that defense counsel "inform the defendant of . . . the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (citing *Gordon*, 156 F.3d at 380).  In light of Mr. Sterritt's claim of deficiency, the Court assumes, without deciding, that by providing Mr. Sterritt with an inaccurate overstatement of the statutory maximum terms of imprisonment carried by Count One and Count Five, Former Counsel's performance was deficient.  The Court finds, however, that Mr. Sterritt was

38

not prejudiced by being advised of an overstated sentencing exposure before rejecting the Plea Offer. The overstated sentencing exposure would likely have made the Plea Offer more attractive so that Mr. Sterritt would be more inclined to accept it. The record instead reveals that Mr. Sterritt had rejected the Plea Offer to Count Two and opted to proceed to trial at his first meeting with Former Counsel to discuss the Plea Offer on October 13, 2023, regardless of the advised maximum sentencing exposure.

### 1.    Ground One:  Deficient Performance

Caselaw establishes that to provide a defendant with constitutionally sufficient assistance when representing him during plea negotiations, defense counsel must "communicate to the defendant [1] the terms of the plea offer," *Purdy*, 208 F.3d at 45 (citing *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999)), "[2] the strength of the case against him or her[,] and [3] the possible sentence of incarceration that may be imposed after a guilty plea as compared to a guilty verdict." *United States v. Belfiore*, 473 F. Supp. 3d 72, 92 (E.D.N.Y. 2020) (Bianco, Cir. J., sitting by designation) (quoting *Daley v. Lee*, No. 10-cv-6065(NGG), 2012 WL 2577472, at *11 (E.D.N.Y. July 3, 2012); citing *Rivera v. United States*, No. 10-cr-316(KBF), 2016 WL 1064605, at *6 (S.D.N.Y. Mar. 14, 2016); *Mitchell v. Rock*, No. 11-cv-2642(JG), 2013 WL 4041545, at *19 (E.D.N.Y. Aug. 19, 2013)); *accord Purdy*, 208 F.3d at 45 (citing *Gordon*, 156 F.3d at 380). Defense counsel's

39

performance "must be considered in the context of all of the advice and information that was available to [the defendant]." *Belfiore*, 473 F. Supp. 3d at 92 (citations omitted). Counsel's performance is owed a "heavy measure of deference." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691).

Here, Former Counsel satisfied the first enumerated requirement by communicating the terms of the Plea Offer during their MDC visit with Mr. Sterritt on October 13, 2023, before the offer expired, so that Mr. Sterritt could read the offer and counsel could discuss it with him. (Mitchell Decl. ¶¶ 4-5.) Former Counsel satisfied the second requirement by communicating the strength of the Government's case against Mr. Sterritt, writing in their November 1, 2023 letter that the Government's evidence would likely lead to Mr. Sterritt's conviction on all counts because the evidence was "devastating" and "impossible to explain away." (Former Counsel's Letter at 4.) The November 1, 2023 letter was not the first time Former Counsel told Mr. Sterritt about the strength of the Government's evidence. The November 1, 2023 letter summarized Former Counsel's advice up to that time (*see* Mitchell Decl. ¶¶ 8-9), and noted that as of November 1, 2023, Former Counsel had "told [Mr. Sterritt] repeatedly" that they believed he "will be convicted at trial" due to the strength of the Government's evidence (Former Counsel's Letter at 4). Based on this record, the Court finds that Former

40

Counsel advised Mr. Sterritt of the strength of the Government's evidence repeatedly and before the Plea Offer expired on October 16, 2023.

The third and final requirement to evaluate if counsel provided effective assistance, as noted above, is that counsel must communicate the possible sentence of incarceration that may be imposed after a guilty plea as compared to a guilty verdict. Here, Former Counsel accurately conveyed the possible sentence of incarceration that could be imposed under the Plea Offer—information that was also described in the Plea Offer itself, which Mr. Sterritt read and discussed with Former Counsel—and communicated largely accurate information about the sentence Mr. Sterritt could expect to receive if convicted of all counts by a jury at trial. But Mr. Sterritt's Former Counsel incorrectly advised him that Count One (conspiracy to commit securities fraud in violation of 18 U.S.C. § 371) carried a statutory maximum term of imprisonment of twenty years, when in fact it carried a statutory maximum term of imprisonment of five years, and that Count Five (conspiracy to commit money laundering in violation of 18 U.S.C. § 1957(a)) also carried a statutory maximum term of imprisonment of twenty years, when in fact it carried a statutory maximum term of imprisonment of ten years. (Mitchell Decl. ¶¶ 5-9 (noting that Former Counsel discussed the details of the Plea Offer with Mr. Sterritt on October 13, 2023 at the MDC and sent

Mr. Sterritt the November 1, 2023 follow-up letter summarizing Former Counsel's advice); Former Counsel's Letter at 7 (providing incorrect statutory maximums).)

The Second Circuit previously has found that counsel's performance fell below objective standards of reasonableness where counsel sent a defendant a letter that analyzed a plea offer and contained inaccurate *understatements* of the defendant's sentencing exposure. *See Gordon*, 156 F.3d at 377, 380. Defense counsel in *Gordon* advised the defendant that he faced a total statutory maximum term of ten years' imprisonment, when the defendant actually faced a statutory maximum term of ten years' imprisonment on each of the twelve counts on which he was indicted, for a total potential incarceratory exposure of 120 years. *See id.*

The one-to-twelve disparity in *Gordon* between counsel's advice and the actual custodial exposure (120 months' imprisonment versus 120 years' imprisonment) is substantially more acute than the four-to-three disparity in Mr. Sterritt's case (100 years' imprisonment versus seventy-five year's imprisonment). Although Mr. Sterritt's circumstances present a smaller disparity than that at issue in *Gordon*, for purposes of the Court's *Strickland* analysis, the Court assumes, without deciding, that Mr. Sterritt can establish that Former Counsel acted deficiently by advising him that he faced an overstated statutory maximum sentence of 100

years' imprisonment when he actually faced a total statutory maximum of seventy-five years' imprisonment.[12]

### 2.  Ground One:  Prejudice

"In light of [] all of the credible evidence in the record, including the sentencing disparity between defendant's plea offer and the PSR . . . the court finds that [Mr. Sterritt's] self-serving statement [that he would have accepted the offer] is not credible and that [he] has not suffered any prejudice." *United States v. Frederick*, 868 F. Supp. 2d 32, 53–54 (E.D.N.Y. 2012) (*United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005)), *aff'd*, 526 F. App'x 91 (2d Cir. 2013).  A defendant seeking to demonstrate prejudice in this context must show a reasonable probability that he would have accepted an earlier plea offer and that it would have been presented to and accepted by the Court had he been afforded effective assistance of counsel.  *See Belfiore*, 473 F.

---

[12] Mr. Sterritt also contends that Former Counsel provided him with "misinformation regarding the . . . sentencing guidelines" (Mot. at 2), and specifically that Former Counsel had "not shared with [Mr. Sterritt] at the time [they] told [him] to reject the Government's favorable plea offer" that the Court would have been required to determine the applicable sentencing range. (Reply ¶ 5.)  Mr. Sterritt's contention is contradicted by the November 1, 2023 letter, which advises that Mr. Sterritt could "make arguments to the judge about why she should give you a sentence far, far lower than the Guideline range," (Former Counsel's Letter at 4–5) and is at odds with the Proposed Plea Agreement (Proposed Plea Agreement ¶¶ 3–4 (noting that the Court was required to consider the applicable Guidelines provisions and that the Proposed Plea Agreement's Guidelines estimate was not binding on the Court)), which Mr. Sterritt read and discussed with Former Counsel on October 13, 2023 (Mitchell Decl. ¶ 5; Nov. 21, 2023 Tr. at 166).  The Court, therefore, finds no evidence in the record that Former Counsel provided Mr. Sterritt with any "misinformation" concerning the Guidelines, and finds that if any misstatements were made, such misstatements would have been completely mitigated by accurate information contained in the Plea Offer, the November 1, 2023 letter, and the discussion on the record in open court at the change-of-plea hearing on November 27, 2023.

Supp. 3d at 90 (citing *Missouri v. Frye*, 566 U.S. 134, 147 (2012)). The defendant must also show (as Mr. Sterritt cannot at this time) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.[13]

Mr. Sterritt has not met his burden of showing a reasonable probability that he would have accepted the Proposed Plea Agreement if he had been properly advised. Thus, he has not established prejudice, which is fatal to his motion.

The Court need not accept a defendant's self-serving statements that, if properly counseled, he would have accepted a plea offer. *See Belfiore*, 473 F. Supp. 3d at 90; *see also Frederick*, 526 F. App'x at 93 (citing *Gordon*, 156 F.3d at 381; *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003)). A disparity between the plea offer and actual sentence imposed, if such disparity exists, is not dispositive of prejudice—it is instead merely one factor that the Court should consider in evaluating a defendant's statement that he would have accepted the plea offer if properly counseled. *See Belfiore*, 473 F. Supp. 3d

---

[13] In this case, there is no dispute whether the Court would have accepted Mr. Sterritt's guilty plea pursuant to the Plea Offer if Mr. Sterritt had timely accepted the offer and properly allocuted. The Court will therefore address only whether Mr. Sterritt has shown a reasonable probability that he would have accepted the Proposed Plea Agreement and that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164. As addressed further herein, Mr. Sterritt cannot show prejudice at this time because he has not been sentenced.

at 91 (citations omitted); *see also Pham*, 317 F.3d at 183 (finding prejudice established where defendant was sentenced to 210 months' imprisonment after his trial counsel failed to communicate Government's plea offer of 78-97 months' imprisonment). Even when a large disparity between a defendant's advised and actual sentencing exposure is shown, "the district court must still find the defendant's evidence to the effect that he would have made a different decision but for his counsel's deficient advice to be credible." *Frederick*, 526 F. App'x at 93 (citing *Purdy*, 208 F.3d at 49; *Arteca*, 411 F.3d at 321).

Here, Mr. Sterritt cannot show any disparity between the Proposed Plea Agreement and his sentence because he has not been sentenced. Furthermore, even though Former Counsel erroneously advised Mr. Sterritt of an effective statutory maximum term of 100 years' imprisonment instead of the actual statutory maximum of seventy-five years (if the statutory maximum term of imprisonment were to be imposed on each count to run consecutively), Former Counsel's November 1, 2023 letter provided sentencing scenarios including if Mr. Sterritt accepted the Proposed Plea Agreement or if he rejected it and were to be convicted of all counts following trial. The Government argues that the misstatement of Mr. Sterritt's sentencing exposure was immaterial. (*See* ECF No. 431 ("Opp.") at 8 ("There is no evidence that [a] largely academic 25-year difference played a role in Sterritt's decision to reject the

45

government's offer and it is illogical to think that it would.").) At least one summary order from the Second Circuit endorses similar logic, finding a proportionately smaller difference between a defendant's actual sentencing exposure and advised sentencing exposure to be immaterial to the defendant's decision to reject a plea offer. *See United States v. Bent*, 654 F. App'x 11, 13–14 (2d Cir. 2016) (affirming district court's denial of defendant's ineffective-assistance claim without an evidentiary hearing because defendant's claim—that he would have accepted plea agreement with stipulated Guidelines sentence of approximately ten years' imprisonment if he knew that conviction at trial carried fifty-five years' mandatory imprisonment instead of fifty-two years' imprisonment—was "simply incredible").

If Mr. Sterritt had been properly advised as to the statutory maximums carried by Counts One and Five, the Court finds no basis to conclude that Mr. Sterritt would have been more likely to plead guilty pursuant to the Proposed Plea Agreement. Mr. Mitchell, in a declaration attached to the Government's opposition, states that on October 13, 2023, when meeting with Mr. Sterritt at the MDC, after he and Ms. Carvlin discussed the details of the Proposed Plea Agreement with Mr. Sterritt and after Mr. Sterritt read the Agreement, Mr. Sterritt "told [Mr. Mitchell and Ms. Carvlin] that he was not interested in pleading guilty pursuant to the government's plea offer." (Mitchell Decl. ¶ 5.) Mr.

Mitchell continues, "We advised Mr. Sterritt that we believed that it was in his best interest not to go to trial.  We told him that he could plead guilty to the indictment without a plea agreement, but we believed he should plead guilty." (*Id.* ¶ 6.)  Mr. Sterritt persisted that "he wanted to proceed to trial." (*Id.* ¶ 7.)  Former Counsel's November 1, 2023 letter confirms that Mr. Sterritt had rejected the Proposed Plea Agreement, which had expired on October 16, 2023.  (Former Counsel's Letter at 4.)  The record establishes that, Mr. Sterritt was intent on proceeding to trial and rejecting the Plea Offer in spite of (not because of) his Former Counsel's advice.  Mr. Sterritt's initial decision to proceed to trial was made in the context of the advice he had just received from his Former Counsel, including Former Counsel's possible overstatement of Mr. Sterritt's sentencing exposure as to Counts One and Five. The Court agrees with the Government's argument that, "if anything, counsel's inaccurate estimate [of the statutory maximum sentence] made the government's offer <u>more</u> attractive, not less[,] because it meant that the plea offer conferred an even greater benefit." (*See* Opp. at 8 (emphasis retained).)

Courts have found that "[w]hen the maximum possible exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject," *Pitts v. United States*, 763 F.2d 197, 201 & n.5 (6th Cir. 1985) (per curiam), and, on the other hand, have found that counsel's understated sentencing

47

exposure may prejudice a defendant who rejected a plea offer, *see Gordon*, 156 F.3d at 380-81 (finding disparity between 120-month maximum term of imprisonment advised by defense counsel and actual 120-year maximum term of imprisonment provided "objective evidence" supporting defendant's statement that he would have accepted plea offer if properly advised); *Cullen v. United States*, 194 F.3d 401, 402-03, 407 (2d Cir. 1999) (remanding for reevaluation of whether defendant had established prejudice where defense counsel had erroneously advised that defendant's "sentence would be about the same whether he accepted the plea agreement or was convicted at trial" when plea bargain in fact yielded sentencing range of "70-78 months" and defendant received 136 month sentence after conviction at trial); *Shiwlochan v. Portuondo*, 345 F. Supp. 2d 242, 263-64 (E.D.N.Y. 2004) (finding prejudice based on disparity between actual maximum term of imprisonment of forty-one and two-thirds years to life, and advised maximum term of twenty-five years to life); *United States v. Day*, 969 F.2d 39, 40, 45-46 (3d Cir. 1992) (finding defendant who rejected plea offer to five-year sentence was prejudiced because he was wrongly advised that he faced eleven-year statutory maximum term of imprisonment if convicted at trial and was actually sentenced to almost twenty-two years). The reasoning of these decisions is persuasive, and in the case of *Gordon* and *Cullen*, controlling.

Accordingly, the Court finds that, in general, overstating a defendant's sentencing exposure, if the defendant were to reject a plea offer, makes the plea offer more attractive, and that understating the defendant's exposure makes the plea offer less attractive.  Where, as here, a defendant rejects an offer to plead to one count at the outset, and again rejects the same plea offer after his counsel overstated his maximum sentencing exposure if convicted of all counts at trial, he cannot, absent other intervening factors, establish prejudice for an ineffective-assistance claim based on the rejection of the plea offer.  *Cf. Patterson v. United States*, No. 06-cr-80(NRB), 2012 WL 3866489, at *7–8 (S.D.N.Y. Sept. 6, 2012) (denying ineffective-assistance claim without a hearing because defendant failed to establish prejudice where his estimated Guidelines imprisonment range, had he pleaded guilty, of 384 to 485 months "considerably mirrors the Guidelines range that he faced after being convicted at trial," of 420 months to life).

In this case there are no other intervening factors establishing prejudice.  Former Counsel adroitly advised Mr. Sterritt at their October 13, 2023 meeting and in their November 1, 2023 letter of different likely Guidelines sentencing ranges, facts relevant to the Court's 18 U.S.C. § 3553(a) analysis, and other information pertinent to Mr. Sterritt's decision of how to proceed in this case, including the strength of the Government's

evidence and likely trial strategy, the jury's likely assessment of Mr. Sterritt's credibility if he were to testify at trial, and arguments that the advisory Guidelines range should be lower than the range calculated in the Proposed Plea Agreement, arguments which Mr. Sterritt would only be entitled to make if he rejected the Plea Offer. As set forth in Mr. Mitchell's January 7, 2025 declaration and Former Counsel's November 1, 2023 letter, Mr. Sterritt rejected his Former Counsel's advice to plead guilty and instead chose to proceed to trial, the very option that Former Counsel advised provided the most risk and Guidelines sentencing exposure. Only on the first day of trial, after the jury and alternates were selected, did Mr. Sterritt reverse course and implement Former Counsel's recommendation that he plead guilty to all counts of the Superseding Indictment without a plea agreement. By pleading to all counts of the Superseding Indictment, Mr. Sterritt exposed himself to higher statutory maximum penalties than if he had pleaded guilty only to Count Two pursuant to the Proposed Plea Agreement but, in exchange, Mr. Sterritt secured many important benefits, including the right to appeal his sentence and his right to argue for a lower advisory Guidelines range than that estimated by the Plea Offer.

       The Court finds that Former Counsel provided largely accurate and useful strategic analysis and advice, that Former Counsel overstated—rather than understated—Mr. Sterritt's maximum

statutory sentencing exposure, and that the difference between his actual seventy-five-year maximum sentencing exposure and the erroneously advised 100-year maximum sentencing exposure is proportionally small, when both figures are compared to the markedly lower twenty-year sentencing exposure under the terms of the Proposed Plea Agreement, *see Bent*, 654 F. App'x at 13–14 (agreeing with district court that it was "simply incredible" that defendant would have accepted plea offer with approximately ten-year Guidelines term of imprisonment if he had known he faced actual mandatory minimum of fifty-five years when he had rejected it believing he faced fifty-two year mandatory minimum). Mr. Sterritt has therefore not shown a reasonable probability that he would have accepted the Plea Offer if correctly advised of his maximum carceral exposure if convicted of all counts. Thus, Mr. Sterritt has not established that he was prejudiced by Former Counsel's overstatement of his sentencing exposure.

**B. Ground Two: Advice Not to Accept the Proposed Plea Agreement**

**1. Ground Two: Deficient Performance**

Mr. Sterritt's second asserted ground, that Former Counsel should have advised him to accept the Plea Offer, is also unavailing. The decision of whether to accept or reject a guilty plea is entirely up to the defendant. "[T]he ultimate decision whether to plead guilty must be made by the defendant," and defense

counsel "must take care not to coerce a client into either accepting or rejecting a plea offer." *Purdy*, 208 F.3d at 45 (citations omitted). In striking a balance between the two impermissible extremes of failing to give advice and coercing a defendant to accept a plea offer, defense counsel's conduct need only fall within a "wide range of reasonableness." *Id.; see also Belfiore*, 473 F. Supp. 3d at 89–90. Counsel rendering advice in considering a plea offer

> may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision.

*Id.* (quoting *Purdy*, 208 F.3d at 45). "Counsel is not *per se* required to make an explicit recommendation on whether the client should accept a plea." *Meszaros v. United States*, 201 F. Supp. 3d 251, 272 (E.D.N.Y. 2016) (citing *Purdy*, 208 F.3d at 46).

Here, the record establishes that defense counsel met with Mr. Sterritt to review the Plea Offer, which specified the maximum sentence of incarceration for Count Two and an estimated Guidelines sentence, on October 13, 2023, before the Government's Plea Offer expired on October 16, 2023, and that Mr. Sterritt told counsel he was "not interested in pleading guilty" after they reviewed and discussed the details of the Plea Offer with him.

52

(Mitchell Decl. ¶¶ 4-5.)  Former Counsel's apparent agreement with Mr. Sterritt's rejection of the Proposed Plea Agreement was well within the range of acceptable attorney conduct in advising a defendant of a plea offer.  Moreover, Former Counsel discussed the strength of the Government's evidence and the likelihood that Mr. Sterritt would be convicted at trial.  Former Counsel's conduct was therefore "objectively reasonable considering all the circumstances," and provided Mr. Sterritt with counsel's "professional advice on this crucial decision of whether to plead guilty."  *Purdy*, 208 F.3d at 44 (internal quotation marks omitted) (quoting *Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996); citing *Strickland*, 466 U.S. at 688); *cf. United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) ("Nor does defense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, constitute improper behavior or coercion that would suffice to invalidate a plea." (citing *Brady v. United States*, 397 U.S. 742, 750 (1970); *United States v. Moree*, 220 F.3d 65, 72 (2d Cir. 2000); *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988))).  Specifically, Former Counsel's November 1, 2023 letter acknowledged that Mr. Sterritt had already rejected the Plea Offer, and that counsel agreed with his decision.  (Former Counsel's Letter at 4.)  The November 1, 2023 letter further confirmed that Former Counsel had "repeatedly" told Mr. Sterritt that they

"strongly believe[d] that [he] will be convicted at trial," and that "the evidence shows that [he] [is] guilty of the charged offenses," evidence Former Counsel characterized as "impossible to explain away" and "devastating." (*Id.*)

As discussed above, the November 1, 2023 letter analyzed the Guidelines calculations under different scenarios: (i) if Mr. Sterritt were to plead guilty to Count Two under the Proposed Plea Agreement; (ii) if he were to plead guilty to all counts without an agreement; and (iii) if he were to be convicted of all counts following trial. The November 1, 2023 letter emphasized the importance of preserving Mr. Sterritt's ability to argue for a lower Guidelines offense level based on, among other factors, a lower loss amount, as well to argue for a reduced sentence based on mitigating factors that the Court must consider pursuant to 18 U.S.C. § 3553(a).

As noted in the November 1, 2023 letter, if Mr. Sterritt had pleaded guilty to Count Two (wire fraud conspiracy) under the Proposed Plea Agreement, then he would have been required to stipulate to conduct relating to Counts One, Three, Four, and Five, which could be considered by the Court "as if the defendant had been convicted" of those counts, Guidelines § 1B1.2(c), resulting in a stipulated advisory sentencing range of 235 to 240 months' imprisonment. Moreover, the Proposed Plea Agreement provided that Mr. Sterritt would stipulate to the Government's Guidelines

calculation and that he would waive the right to appeal a sentence of 240 months or less.  As Former Counsel further described in the November 1, 2023 letter, if Mr. Sterritt pleaded guilty to all counts without an agreement, Mr. Sterritt would preserve his ability to argue for a lower Guidelines range.[14]  Former Counsel also noted in their November 1, 2023 letter that by rejecting the Proposed Plea Agreement, Mr. Sterritt preserved his right to appeal his sentence.  (Former Counsel's Letter at 5.)

Notwithstanding that Former Counsel advised Mr. Sterritt of the risks of proceeding to trial in their November 1, 2023 letter, Mr. Sterritt exercised his right to trial, rather than plead guilty.  Despite Mr. Sterritt's receipt of the November 1, 2023 letter describing the strength of the Government's evidence against Mr. Sterritt, noting Former Counsel's strong belief that Mr. Sterritt would be convicted of all counts by the jury, and noting that "[w]hile [Former Counsel] can NOT guarantee what sentence [he] will receive (if convicted) under any scenario, [counsel] are extremely confident that [Mr. Sterritt] will get a substantially lower sentence if [he] plead[s] guilty" (*id.* at 4

---

[14] Former Counsel reiterated that Mr. Sterritt preserved his ability to argue for a lower Guidelines range at the November 27, 2023 change-of-plea hearing. (Nov. 27, 2023 Plea Tr. at 33 ("MR. MITCHELL:  Your Honor, we understand the government's [Guidelines] estimate.  We intend to argue a number of the enhancements and we've discussed all of this with Mr. Sterritt.")).

(emphasis retained)), Mr. Sterritt rejected the Plea Offer and proceeded to trial.

Former Counsel, both during their October 13, 2023 meeting with Mr. Sterritt at the MDC and in their November 1, 2023 letter, articulated Mr. Sterritt's "chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government)," and Mr. Sterritt's "comprehension of the various factors that will inform his plea decision," *Belfiore*, 473 F. Supp. 3d at 89–90 (quoting *Purdy*, 208 F.3d at 45). The Court therefore finds that Former Counsel's assistance was not deficient, even assuming counsel decided not to advise Mr. Sterritt to accept the Plea Offer.

### 2. Ground Two: Prejudice

Even if Former Counsel were deficient by not advising Mr. Sterritt to accept the Plea Offer, Mr. Sterritt suffered no prejudice by such deficiency. The record as a whole reveals that Mr. Sterritt was intent on proceeding to trial regardless of Former Counsel's in depth and largely accurate advice. Specifically, after having been repeatedly advised by Former Counsel during the October 13, 2023 meeting at the MDC that he should plead guilty, Mr. Sterritt immediately and repeatedly rejected Former Counsel's advice and stated his intention to proceed to trial. (Mitchell Decl. ¶¶ 5-7.) After receiving Former Counsel's November 1, 2023

56

letter summarizing some of the "devastating" evidence against Mr. Sterritt, stating that Former Counsel believed Mr. Sterritt would be convicted at trial of all counts of the Superseding Indictment, and advising of "worst" and "best" case sentencing scenarios, Mr. Sterritt still persisted in exercising his right to proceed to trial for several more weeks, only changing his mind at the last possible moment, after a jury and alternates were selected for his trial.   It is "highly improbable" that Mr. Sterritt would have taken the Plea Offer no matter the advice that he received as to whether he should have taken it, as "all available facts suggest overwhelmingly that [Mr. Sterritt] still would have chosen to go to trial," *Bent*, 654 F. App'x at 14, at least up through October 16, 2023, when the Plea Offer expired.   Thus, Mr. Sterritt has not shown a reasonable probability that he would have accepted the Plea Offer if advised to accept it.

**C.   Ground Three:  Failure to Advise of Additional Financial Penalties**

**1.   Ground Three:  Deficient Performance**

Mr. Sterritt's claim that pleading guilty to all counts exposed him to "additional financial penalties" (Suppl. Mot. at 2) is largely unsupported.   To the extent he is theoretically exposed to higher financial penalties, Former Counsel's performance was not deficient if they failed to advise Mr. Sterritt of any differences in maximum financial penalties between pleading guilty

to all counts without an agreement and pleading guilty pursuant to the terms of the Proposed Plea Agreement.

First, Mr. Mitchell represented, and Mr. Sterritt did not dispute, during Mr. Sterritt's November 27, 2023 change-of-plea hearing that Former Counsel had advised Mr. Sterritt of the "maximum sentences or fines or other penalties that could be imposed if he does plead guilty." (Nov. 27, 2023 Plea Tr. at 10-11.)  During the same hearing, the Court advised Mr. Sterritt of financial penalties that he would face by pleading guilty to all counts of the Superseding Indictment without an agreement (*id.* at 21-28), and he was repeatedly advised of the Government's estimated restitution amount of $17,022,476.61 (*id.* at 22, 23, 25, 26, 28). Moreover, Mr. Sterritt's exposure to financial penalties would have been substantially the same if he had accepted the Plea Offer.

The following table compares the maximum financial penalties Mr. Sterritt would face if he had pleaded guilty pursuant to the Proposed Plea Agreement with the penalties that he now faces having pleaded guilty to all five counts of the Superseding Indictment without an agreement.  The table's values are more fully explained further below.

| Maximum Financial Penalty Pursuant to the Proposed Plea Agreement | Maximum Financial Penalty Pursuant to Open Plea to All Counts |
| --- | --- |

| **Mandatory Special Assessment** (18 U.S.C. § 3013) | Mandatory special assessment of $100 ($100 for single count of conviction pursuant to Plea Offer). | Mandatory special assessment of $500 ($100 for each of five counts of conviction). |
| --- | --- | --- |
| **Restitution** (18 U.S.C. 3663A) | Mandatory restitution of actual loss of approximately $17 million.[15] | Mandatory restitution of actual loss of approximately $17 million. |
| **Forfeiture** (18 U.S.C. §§ 981, 982, 1956; 21 U.S.C. § 853; 28 U.S.C. § 2461) | The Government may seek forfeiture of the money allegedly embezzled from investors. | The Government may seek forfeiture of the money allegedly embezzled from investors. |
| **Criminal Fine** (18 U.S.C. §§ 371, 1343, 1349, 1957, 3571; 15 U.S.C. § 78ff) | The Court may impose a fine of approximately $34 million based on loss amount (twice the gross loss[16]); or $250,000 otherwise (fine for single felony offense set by § 3571(b)(3)). | The Court may impose a fine of approximately $34 million based on loss amount (twice the gross loss); or $10,750,000 otherwise (sum of $250,000 each for Counts One, Two, and Five, and $5,000,000 each for Counts Three and Four). |

The above table reveals two differences:    ***First***, the Court is

---

[15] The Court has authority, based on the evidence, to find a greater or lesser loss amount for purposes of Mr. Sterritt's restitution obligations as well as his Guidelines depending on, among other things, the introduction of reliable evidence concerning the loss amount. *See United States v. Niebuhr*, 456 F. App'x 26 28-38 (2d Cir. 2012) ("While calculating the loss amount for Guidelines purposes and the victims' losses for restitution purposes are obviously closely related inquiries, they are not identical." (internal quotation marks omitted; citations omitted)); *see also* 18 U.S.C. 3663(a)(1)(B); Guidelines § 6A1.3; *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979); *United States v. Ibanez*, 924 F.2d 427, 430 (2d Cir. 1991); *see also* Fed. R. Crim. P. 32(i)(3).

[16] The loss amount for purposes of determining a maximum fine pursuant to § 3571(d) may ultimately differ from the loss for restitution and Guidelines purposes. *See United States v. Nelson*, No. 07-cr-326(RWS), 2008 WL 4962988, at *1, *3-4, *5 (S.D.N.Y. Nov. 13, 2008) (calculating Guidelines using intended loss of $960,811.06, calculating maximum fine using twice the actual loss of $853,811.06, and ordering $852,073.95 in restitution).

required to impose a $100 mandatory special assessment for each felony count of conviction.  *See* 18 U.S.C. § 3013(a)(2)(A).  Mr. Sterritt would have been assessed for one mandatory special assessment of $100 if he had accepted the Plea Offer and pleaded guilty only to Count Two.  As a result of pleading guilty to all five counts of the Superseding Indictment, Mr. Sterritt will instead be assessed for five mandatory special assessments of $100 each for a total of $500.

*Second*, under the terms of the Proposed Plea Agreement, Mr. Sterritt's maximum fine would have been approximately $34 million, or twice the gross loss from the offense.  (*See* Opp. at 7; ECF No. 407, PSR, ¶¶ 29, 45, 62, 101-102, 109-110, 186); 18 U.S.C. § 3571(b)(2), (d).  Based on Mr. Sterritt's guilty plea to all five counts, he faces the same approximately $34 million maximum fine authorized by 18 U.S.C. § 3571(d) as twice the gross loss from the offenses of conviction.  *See, e.g.*, *United States v. Vilar*, No. 05-cr-621(RJS), 2010 WL 1491859, at *2 (S.D.N.Y. Apr. 7, 2010) (concluding maximum fine was "twice the gross pecuniary gain or loss" notwithstanding multiple offenses of conviction).

The maximum fine amount, however, could theoretically differ if the gross loss attributable to Mr. Sterritt's offense conduct were low enough that the maximum fine provided by § 3571(d) were lower than the sum of statutorily defined fines set by each of Counts One through Five, or if "imposition of a fine under th[e]

60

subsection would unduly complicate or prolong the sentencing process." § 3571(d). In either of the two scenarios just described, Mr. Sterritt would have increased his maximum fine exposure by pleading guilty to all counts of the Superseding Indictment. Ignoring the twice-the-gross-loss provision of 18 U.S.C. § 3571(d) (and a similar "twice-the-criminally-derived-property" provision of 18 U.S.C. § 1957(b)(2)), the maximum fines for the five counts of the Superseding Indictment are as follows: $250,000 for each of Counts One, Two, and Five, and $5,000,000 for each of Counts Three and Four. *See* 18 U.S.C §§ 371, 1343, 1349, 1957(b)(1), 3571(b)(3); 15 U.S.C. § 78ff(a). Considering only these statutory maximum fines, the maximum fine for Count Two alone is $250,000 and the maximum fine for all five counts is $10,750,000, resulting in a difference of $10,500,000 in the statutory maximum fine between pleading guilty to Count Two pursuant to the Proposed Plea Agreement and pleading guilty to all counts without an agreement. The fine, however, is discretionary and need not be imposed if a defendant cannot afford to pay or if significant restitution is mandatory. *See* 18 U.S.C. § 3572(b) ("If, as a result of a conviction, the defendant has the obligation to make restitution . . . , the court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution.").

There are no differences, however, in Mr. Sterritt's restitution and forfeiture obligations. (*See* Opp. at 7.) Mr. Sterritt's restitution obligation is the same now as it would have been if he had pleaded pursuant to the Proposed Plea Agreement. Under 18 U.S.C. § 3663A, restitution is mandatory to compensate victims of wire fraud conspiracy for their actual losses. *See, e.g.*, *United States v. Jean*, No. 20-cr-51(WFK), 2024 WL 862357, at *1, *7, *10 (E.D.N.Y. Feb. 29, 2024) (ordering restitution of "actual loss amount of $100,000" when sentencing defendant on single count of wire fraud conspiracy); *see id.* at *6 ("The Court is also required to impose . . . restitution pursuant to 18 U.S.C. § 3663A."); *see generally* 18 U.S.C. §§ 3663–64 (concerning restitution). Thus, pleading guilty to additional counts charged based on the same investor losses does not increase Mr. Sterritt's restitution obligation.

Mr. Sterritt's forfeiture exposure is also the same now as if he had pleaded pursuant to the Proposed Plea Agreement. In either case, the Government may seek forfeiture of the money allegedly embezzled from investors. *See* 18 U.S.C. §§ 981, 982, 1956; 21 U.S.C. § 853; 28 U.S.C. § 2461(c).

The November 1, 2023 letter by Former Counsel made no representations about differences in the maximum financial penalties that Mr. Sterritt faced if he were to plead guilty pursuant to the Plea Offer or without an agreement, or if he were

62

to be convicted at trial. The November 1, 2023 letter instead focused on the carceral aspects of the applicable Guidelines and mitigating factors that the Court could consider pursuant to 18 U.S.C. § 3553(a) in order to assist Mr. Sterritt in minimizing his likely term of incarceration. Neither Mr. Sterritt nor Former Counsel has stated whether the maximum financial penalties relating to various scenarios were discussed. If Former Counsel failed to advise Mr. Sterritt of potential financial penalties, such failure would not constitute deficient performance in this case. Mr. Sterritt has presented no authority (and the Court is aware of none) that requires counsel to explain maximum financial penalties to satisfy objective standards of reasonableness. *See Gordon*, 156 F.3d 380 (noting that "knowledge of the comparative sentencing exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty" (alteration adopted) (quoting *Day*, 969 F.2d at 43)); *Day*, 969 F.2d at 43 (clarifying that "comparative sentencing exposure" in this context refers to advice concerning incarceratory sentences); *Belfiore*, 473 F. Supp. 3d at 92 (noting that defense counsel should generally inform defendants of "the possible *sentence of incarceration* that may be imposed after a guilty plea as compared to a guilty verdict" (emphasis added) (quoting *Daley*, 2012 WL 2577472, at *11; citing *Rivera*, 2016 WL 1064605, at *6; *Mitchell*, 2013 WL 4041545, at *19)); *United States v. Sydnor*, No.

16-cr-21(DCR)(CJS), 2020 WL 6495482, at *8–9 & nn.4 & 8 (E.D. Ky. July 24, 2020) (noting absence of authority establishing deficient performance based on counsel's failure to inform defendant of Guidelines minimum fine in plea negotiations), *report and recommendation adopted*, 2020 WL 4934600.

Mr. Sterritt would have faced a statutory maximum of twenty years' imprisonment if he had accepted the Proposed Plea Agreement and now faces a statutory maximum term of seventy-five years' imprisonment, with no statutory minimum in either case. It was therefore reasonable for Former Counsel to advise Mr. Sterritt in their November 1, 2023 letter that they intended to argue to this Court to exercise its discretion at sentencing to impose a lenient custodial sentence as described in the November 1, 2023 letter's "best case" Guidelines scenario. If Former Counsel intended to argue that this Court should not impose discretionary fines at sentencing due to Mr. Sterritt's possible inability to pay,[17] any failure by counsel to advise Mr. Sterritt concerning maximum or discretionary fines did not amount to deficient performance in this case.

---

[17] Mr. Sterritt submitted a sworn financial affidavit dated December 27, 2024 as required by 18 U.S.C. § 3664(d)(3). Upon receipt of Mr. Sterritt's affidavit, the Probation Department filed an addendum to the PSR, stating that based on "the defendant's financial profile and the priority of restitution in the instant case, the defendant appears unable to pay a fine." (ECF No. 443.)

Even if defense counsel had failed to advise Mr. Sterritt of any additional financial penalties that he would face if he pleaded guilty to, or was found guilty of, all counts of the Superseding Indictment, and even if such failure fell below objective standards of reasonableness, such failure would likely have been cured by accurate, albeit incomplete, information in the Proposed Plea Agreement concerning applicable discretionary fines and mandatory restitution. *See Belfiore*, 473 F. Supp. 3d at 92 (defense counsel's advice "must be considered in the context of all of the advice and information that was available to [defendant], including the substance of any advice provided by [former counsel] and information made available to [defendant] prior to [current counsel's] representations" (citation omitted)); (Proposed Plea Agreement ¶ 1(d)–(g) (describing financial penalties corresponding to Count Two, including "mandatory" restitution "in an amount to be determined by the Court at sentencing," and a maximum fine of the greater of $250,000 or twice the gross gain or loss); *id.* ¶ 3 (applying Guideline for loss amount "exceed[ing] $9,500,000"); *id.* ¶ 7 (proposing $10,944,000 forfeiture money judgment).) Mr. Sterritt does not dispute that he would have been aware of at least his likely restitution obligation and of the maximum financial penalties carried by Count Two by virtue of having read them in the Plea Offer.

## 2.   **Ground Three:   Prejudice**

Where Mr. Sterritt was (and is) facing a total incarceratory sentencing exposure of seventy-five years, he has not demonstrated a reasonable probability that he would have accepted the Plea Offer, had he been informed of potentially larger financial penalties, some of which the Court could, in its discretion, decline to impose.   *See* Guidelines § 5E1.2, application note 3; *cf. Purdy*, 208 F.3d at 43–44, 48 (defense counsel acted reasonably by informing defendant of likely incarceratory sentence pursuant to plea offer as compared to likely sentence if convicted at trial).   Thus, even if the omission of financial penalties amounted to deficient performance, and even if such omission were not cured by the inclusion of accurate but incomplete information in the Proposed Plea Agreement, it would still not have prejudiced Mr. Sterritt because Former Counsel advised him of the significant statutory maximum terms of imprisonment that he faced in their November 1, 2023 letter.   *See Sydnor*, 2020 WL 6495482, at *10 (concluding, as to prejudice, reasonable defendant would not risk life in prison to avoid possible Guidelines fine of $15,000).

Mr. Sterritt was intent on proceeding to trial when he had been repeatedly advised that he would likely be convicted due to the Government's "devastating" evidence and erroneously advised that, if convicted, he faced a maximum carceral term of 100 years.

66

For Mr. Sterritt to contend that he would have reconsidered his decision to proceed to trial because, in addition to risking what he believed to be a maximum sentence of 100 years in prison (and what was actually a maximum of 75 years), he could also have been ordered to pay $400 more in special assessments and possibly, but improbably, higher fines is "simply incredible," *Bent*, 654 F. App'x at 13.  Thus, Mr. Sterritt has not shown a reasonable probability that he would have accepted the Plea Offer if he had received additional advice concerning his potential financial exposure if convicted of all counts of the Superseding Indictment.

### D.    Additional Grounds

Mr. Sterritt raises additional grounds in his supplemental submission and reply.  In his supplemental submission, Mr. Sterritt contends, "In advising Defendant to reject the proposed plea, counsel advised that the sentence Defendant would likely receive after a jury trial would be less than that set forth in the plea agreement."  (Suppl. Mot. at 2.) Mr. Sterritt adds in his reply that "former counsel advised that accepting the plea offer would be tantamount to a conviction after trial, and that the sentencing exposure would be the same."  (Reply ¶ 7.)  Mr. Sterritt also claims that during the October 13, 2023 meeting "[t]here was no discussion of comparative sentences other than counsel's advice that accepting the plea would be the same as if [he] had been convicted after a trial" and "virtually no

discussion at all of the details [of the Proposed Plea Agreement], with the exception of the sentencing range set forth in the proposed plea offer." (*Id.* ¶ 5.) As discussed herein, Mr. Sterritt's additional grounds are contradicted by the November 1, 2023 letter from his Former Counsel, which provided, among other things, comparative possible sentences, even though, when asked whether he had the opportunity to speak to his lawyers about his decision to plead guilty at his change-of-plea hearing, Mr. Sterritt admitted to receiving the letter. (*See* Nov. 27, 2023 Plea Tr. at 11 (admitting to receiving "two-page document that had three or four different scenarios").)

The Court finds that the additional grounds raised in Mr. Sterritt's supplemental submission and reply, as summarized above, are "'so inconsistent with the facts of record in this case' as to make any such claim[s] 'patently meritless' and evidentiary proceedings . . . 'clearly unnecessary.'" *Ashburn*, 2015 WL 2179794, at *8 (quoting *United States v. Avendano*, No. 02-cr-1059(LTS), 2005 WL 1265860, at *2 (S.D.N.Y. May 26, 2005)); *see also Vargas v. United States*, 819 F. Supp. 2d 366, 377 (S.D.N.Y. 2011) ("the Court need not assume the credibility of factual assertions that are contradicted by the underlying record and does not need to credit airy generalities, conclusory assertions, and the petitioner's hearsay statements" (alteration adopted; internal quotation marks and citations omitted)).

First, several of Mr. Sterritt's statements are illogical and contradictory. For example, it would be illogical for Former Counsel to advise Mr. Sterritt that if he were convicted after trial, he would face a lesser sentence than if he had accepted the Plea Offer, and to simultaneously advise Mr. Sterritt that accepting the Plea Offer would be "tantamount to a conviction after trial." (Reply ¶ 7.)

Mr. Sterritt's assertions are further contradicted by Former Counsel's November 1, 2023 letter, which repeatedly advised Mr. Sterritt that he would likely face a higher sentence if he proceeded to trial, a contingency characterized by the letter as a "[w]orst-case scenario." (Former Counsel's Letter at 10.) The November 1, 2023 letter establishes that Former Counsel did not advise Mr. Sterritt either that he would face a lesser sentence if he were convicted after trial than if he had accepted the Plea Offer (which had expired, and he had already rejected) or that accepting the Plea Offer would be tantamount to a conviction after trial. (*See id.* at 7–10.) And although the November 1, 2023 letter provided incorrect statutory maximum terms of imprisonment for two of the five counts of the Superseding Indictment, it correctly noted that Mr. Sterritt's maximum carceral exposure for Count Two of the Superseding Indictment, the count to which the Proposed Plea Agreement would have required Mr. Sterritt to plead guilty, would be twenty years' imprisonment. (*Id.* at 7 (noting

69

Guidelines calculation for Proposed Plea Agreement was "capped at 240 [statutory maximum]" (brackets retained)).)  Mr. Sterritt's assertions are also belied by the Government's cover letter attaching the Plea Offer, which stated, "If your client rejects the plea offer and is convicted after trial, your client's sentencing exposure under the relevant statutes and Sentencing Guidelines is likely to be higher after trial than if the proposed plea agreement were to be entered."  (Proposed Plea Agreement, Cover Letter.)  The record clearly establishes that Mr. Sterritt read the Proposed Plea Agreement and discussed it with his counsel. (*See* Mitchell Decl. ¶ 5; *see also* Nov. 21, 2023 Tr. at 166.)

The authenticity of Former Counsel's November 1, 2023 letter and of the Proposed Plea Agreement are not in dispute, and Mr. Sterritt himself attaches both documents to his supplemental submission and specifically relies on excerpts of both documents in support of his arguments.  (*See* Supp Mot. at 1; Reply ¶¶ 4, 7.) Moreover, Mr. Mitchell's declaration states that the November 1, 2023 letter "summarized [his and Ms. Carvlin's] advice" to Mr. Sterritt concerning the Proposed Plea Agreement.  (Mitchell Decl. ¶ 8.)  Mr. Sterritt does not dispute that he received the November 1, 2023 letter.

The Court need not credit contradictory statements in Mr. Sterritt's supplemental submission and reply.  *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) ("a district court

70

[considering ineffective-assistance claim brought pursuant to 28 U.S.C. § 2255] need not assume the credibility of factual assertions, as it would in [some] civil cases [and motions], where the assertions are contradicted by the record in the underlying proceeding" (citations omitted)); *see also Belfiore*, 473 F. Supp. 3d at 91 n.3 (finding defendant's sworn testimony at evidentiary hearing not credible where it conflicted with his previously submitted affidavit and his former counsel's prior statements to the court); *Perez v. United States*, No. 14-cv-3995(VSB), 2017 WL 1628902, at *7 (S.D.N.Y. May 1, 2017) (rejecting assertions in defendant's affidavit as not credible where they were "implausible on [their] face," not raised in defendant's "voluminous initial submission," or were self-contradicting).  Therefore, the Court does not find persuasive Mr. Sterritt's assertions, raised for the first time in his supplemental submission and reply, that Former Counsel (i) advised Mr. Sterritt that proceeding to trial would be the same as pleading guilty (whether pursuant to the Plea Offer or otherwise), (ii) advised Mr. Sterritt that his sentencing exposure under the Plea Offer would be the same as if he were to be convicted after trial, and (iii) largely failed to advise Mr. Sterritt of comparative sentences and pertinent details of the Plea Offer.

Even if Former Counsel had provided incorrect advice when discussing the Plea Offer with Mr. Sterritt in person on October 13, 2023, Former Counsel's November 1, 2023 letter

effectively advised Mr. Sterritt of counsel's clear advice not to proceed to trial and that his sentencing exposure from accepting the Plea Offer was substantially lower than if he were to be convicted following a trial. (*Compare* Former Counsel's Letter at 7 (noting maximum sentence of 240 months' imprisonment pursuant to terms of Proposed Plea Agreement), *with id.* at 10 (noting possible "Guidelines range of imprisonment of 360 months to life")).) Following his receipt of the November 1, 2023 letter, Mr. Sterritt continued in his earlier decision to reject the Proposed Plea Agreement and instead to proceed to trial. From at least the date that he received Former Counsel's November 1, 2023 letter until he decided to plead guilty without an agreement on November 27, 2023, i.e., on the first day of trial, Mr. Sterritt was aware of Former Counsel's comparative sentencing analysis but "chose not to seek reinstatement of the [plea] deal, invoking h[is] trial right instead." *Graham*, 51 F.4th at 78–79. By "making a knowing and intelligent decision to proceed to trial," Mr. Sterritt "waive[d] a contingent right to plead guilty—the kind granted by *Frye* and *Lafler*." *Id.* at 79 & n.9 (citing *Frye*, 566 U.S. at 148–49; *Lafler*, 566 U.S. at 163–64) ("Waiver here takes a unique form because *Frye* and *Lafler* convey unique rights. A defendant waives a right to trial by pleading guilty; we have no trouble concluding that she waives a contingent right to plead guilty . . . by making a knowing and intelligent decision to proceed to trial.").

### E.    Reasonable Probability That the End Result of the Criminal Process Would Have Been More Favorable

Mr. Sterritt has insisted on proceeding *pro se* and pressing his motion to withdraw his guilty plea before being sentenced.  The lack of a sentence provides an independent basis to find that Mr. Sterritt cannot establish prejudice and to deny his motion.  *See Lafler*, 566 U.S. at 164 (prejudice requires showing that but for alleged ineffective assistance, defendant's "conviction or sentence, or both, under the [plea] offer's terms would have been less severe than under the judgment and sentence that in fact were imposed").  Mr. Sterritt argues that he is necessarily worse off than if he had accepted the Proposed Plea Agreement because he is now exposed to a higher statutory maximum term of imprisonment than he would have been under the Proposed Plea Agreement (he is now exposed to a seventy-five-year statutory maximum sentence if the statutory maximum term of imprisonment for each count were to be imposed consecutively, whereas he would have been exposed to a twenty-year statutory maximum term of imprisonment pursuant to the terms of the Proposed Plea Agreement), and suggests that he is also prejudiced because he is facing a higher Guidelines range than if he had accepted the Proposed Plea Agreement.  (*See, e.g.*, Suppl. Mot. at 1 ("It should be noted that, inter alia, the proposed plea offer contained a stipulated loss amount of $9,500,000, whereas the presentence report – in view of

73

the open plea – recommends that the loss amount of $117,022,476.61 be used to determine the applicable sentencing range."); *id.* at 2 ("the open plea [that] counsel advised Defendant enter exposed him to 75 years imprisonment, and the recommended sentencing range is 292 to 365 months.").)[18]

Mr. Sterritt is correct that he is exposed to a higher statutory maximum term of imprisonment due to his open plea than if he had pleaded guilty to a single count of wire fraud conspiracy under the terms of the Proposed Plea Agreement, but he is incorrect that he is necessarily in a worse position when it comes to his Guidelines calculations. The Court has not yet calculated his Guidelines sentencing range because the parties' sentencing

---

[18] First, the Plea Offer did not include a "stipulated loss amount of $9,500,000." It included an "estimate[d] likely adjusted offense level" based, in part, on a loss amount "exceed[ing] $9,500,000." (Proposed Plea Agreement ¶ 3, at 3 (citing Guidelines § 2B1.1(b)(1)(K)).) The Plea Offer's Guidelines estimate was "not binding on the [U.S. Attorney's] Office, the Probation Department[,] or the Court." (*Id.* ¶ 4.) Thus, Probation's apparent recommendation in the PSR of an intended loss of approximately $117 million for purposes of its Guidelines calculation was not made "in light of the open plea" as Mr. Sterritt suggests, but is instead a recommendation that the Probation Department would likely have made if Mr. Sterritt had accepted the Plea Offer.

Second, Mr. Sterritt's concern regarding the approximately $117 million figure used by Probation in its PSR Guidelines calculation (PSR ¶¶ 71–74, 101, 122) appears to reflect Mr. Sterritt's misunderstanding of the Sentencing Guidelines. For purposes of Guidelines Section 2B1.1, the "greater of actual loss or intended loss" must be used to determine the offense level. Guidelines § 2B1.1(b)(1)(A) & cmt. n.3 (providing further guidance on loss calculation); *accord United States v. Kukoyi*, 126 F.4th 806, 812 (2d Cir. 2025) (affirming district court's Guidelines calculation using intended loss); *id.* at 816 (Menashi, Cir. J., concurring) ("the district court properly calculated [defendant's] loss enhancement based on the intended loss amount"). Prior to sentencing, if warranted, the Court may afford Mr. Sterritt the opportunity to introduce evidence and present arguments directed to the question of the appropriate loss amount for purposes of his Guidelines. *See, e.g.*, *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979).

submissions have not been completed. Moreover, as discussed *supra*, the Guidelines estimate included in the Proposed Plea Agreement was a preliminary estimate by the Government and was not binding on the Court, the Probation Department, or the Government. (*See* Proposed Plea Agreement ¶ 4 ("The Guidelines estimate set forth in paragraph 3 is not binding on the [U.S. Attorney's] Office, the Probation Department or the Court.").) Thus, even if Mr. Sterritt had pleaded guilty pursuant to the Plea Offer, the Probation Department, and even the Government, could have provided or advocated for a higher loss amount (for Guidelines or restitution purposes) or for any other applicable Guidelines provisions, and the Court would independently calculate Mr. Sterritt's applicable Guidelines sentence. In any event, being exposed to a higher advisory Guidelines range is not necessarily prejudicial. Even miscalculated Guidelines ranges do not necessarily establish a reasonable probability of prejudice. *See Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) ("There may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist. The sentencing process is particular to each defendant, of course, and a reviewing court must consider the facts and circumstances of the case before it." (citing *United States v. Davila*, 569 U.S. 597, 611 (2013))); *see also United States v. Griffin*, No. 20-2246, 2021 WL 4699186, at *2 (2d Cir. Oct. 8, 2021)

(affirming sentence where district court incorrectly calculated Guidelines range because district court "stated at sentencing that the time imposed was warranted regardless of the Guidelines range" and the Circuit found that the district court's mistake "had no effect on the sentence chosen").

To establish prejudice, Mr. Sterritt must, but cannot, show a reasonable probability that he would have received a lesser sentence under the terms of the Plea Offer than the one he will ultimately receive having pleaded guilty to all counts of the Superseding Indictment without an agreement. *See, e.g.*, *Perez*, 2017 WL 1628902, at *6 (concluding defendant needed to show "reasonable probability that [the defendant] would have pleaded guilty and received a lesser sentence" (citing *Pham*, 317 F.3d at 194; *Gordon*, 156 F.3d at 380-81)). And Mr. Sterritt cannot make a "reasonable probability" showing until he is, in fact, sentenced. Moreover, Mr. Sterritt has not been exposed by his guilty plea to any mandatory minimum or mandatory consecutive terms of imprisonment, and cannot establish that his sentence will be more onerous than if he had accepted the Plea Offer.

The Court cannot determine at this stage of the proceedings, without complete sentencing submissions by the parties, whether Mr. Sterritt will be worse off having pleaded guilty without an agreement but having preserved his right to argue

for a lower application of the Guidelines and other facts relevant to the Court's 18 U.S.C. § 3553(a) analysis.

Both Mr. Sterritt and the Government are still able to proffer arguments and evidence regarding the Guidelines and 18 U.S.C. § 3553(a) factors in advance of his sentencing. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); Guidelines § 6A1.3 (courts may consider reliable information to resolve disputed Guidelines application); *United States v. Fatico*, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979) (courts may hold evidentiary hearings to resolve disputed facts relevant to sentencing); *United States v. Ibanez*, 924 F.2d 427, 430 (2d Cir. 1991) (courts may consider written statement of counsel or affidavits of witnesses to resolve disputed Guidelines application); *see also* Fed. R. Crim. P. 32(i)(3) (courts may accept undisputed portions of PSR as findings of fact and must rule on disputed issues of fact or determine that such a ruling is unnecessary because the matter will not affect sentencing).

Thus, Mr. Sterritt is unable to meet his burden of showing a reasonable probability "that the conviction or sentence, or both, under the offer's terms would have been less severe than

under the judgment and sentence that in fact were imposed."
*Lafler*, 566 U.S. at 164.[19]

### F.   Evidentiary Hearing

For many of the same reasons that Mr. Sterritt has not shown prejudice, the Court finds that he has not met his burden of providing "objective evidence" to bolster his unsupported self-serving statement that he would have accepted the Plea Offer if correctly advised.  Consequently, an evidentiary hearing is not warranted.

"Although the Court need not accept defendants' self-serving, post-conviction statements that they would have pleaded guilty if properly advised, a defendant is entitled to an evidentiary hearing on this issue if his statement is supported by some objective evidence."  *Belfiore*, 473 F. Supp. 3d at 90 (alterations adopted; internal quotation marks omitted; citations omitted) (quoting *Gluzman v. United States*, 124 F. Supp. 2d 171, 177 (S.D.N.Y. 2000); citing *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011); *Dodakian v. United States*, No. 14-cv-1188(AJN)(SN), 2015 WL 11144511, at *14, *24 (S.D.N.Y. Aug. 14, 2015); *Vargas v. United States*, 951 F. Supp. 2d 531, 550 (S.D.N.Y. 2013)).  Objective evidence in this context may exist where there is a "significant disparity between the sentence recommended in

---

[19] Mr. Sterritt will be sentenced after the Court appropriately considers the Guidelines and 18 U.S.C. § 3553(a) factors.

the plea offer and the sentence imposed after a conviction at trial." *Id.* (citing *Pham*, 317 F.3d at 182); *see also id.* at 90 n.2 ("There is no magic formula to use in determining whether a disparity between sentences is 'significant.'" (quoting *Mickens v. United States*, No. 97-cv-2122(JS), 2005 WL 2038589, at *8 (E.D.N.Y. Aug. 17, 2005))); *Gordon*, 156 F.3d at 381 (affirming finding that "a great disparity between the actual maximum sentencing exposure under the Sentencing Guidelines and the sentence exposure represented by defendant's attorney provides sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would differ"). "Objective evidence" may come in the form of a "great disparity" between an understated sentencing exposure advised by defense counsel and an "actual maximum sentencing exposure under the Sentencing Guidelines," *see Gordon*, 156 F.3d at 381 (finding objective evidence where defense counsel advised defendant he faced 120 months, actual exposure was 120 years, preliminary advisory Guidelines range calculated by PSR was 262 to 327 months, and imposed sentence was 210 months), or may comprise "a significant disparity between the sentence recommended in the plea offer and the sentence imposed after a conviction at trial," *Belfiore*, 473 F. Supp. 3d at 90 (citing *Pham*, 317 F.3d at 182); *accord Pham*, 317 F.3d at 182-83 (finding objective evidence due to "undisputed sentencing disparity of at least 113 months

between the high end of the government's plea offer and [defendant's] [210-month] sentence after a trial conviction").

Here, the pertinent comparison is between, on the one hand, the overstated sentencing exposure advised by Former Counsel in their November 1, 2023 letter of twenty years on each of the five counts of the Superseding Indictment (or 100 years in total if imposed consecutively), and on the other hand, either (i) Mr. Sterritt's actual maximum statutory sentencing exposure of five years on Count One, twenty years on Counts Two through Four, and ten years on Count Five (or seventy-five years in total if imposed consecutively); or (ii) Mr. Sterritt's advisory Guidelines sentencing range for all counts of the Superseding Indictment, which, as calculated in the PSR,[20] is 292 to 365 months. *See Gordon*, 156 F.3d at 381 (considering Guidelines range in PSR when assessing disparity). Here, both Mr. Sterritt's actual maximum statutory sentencing exposure of seventy-five years, and the advisory Guidelines range of 292 to 365 months (between twenty-four and a third years and thirty years and five months) calculated in the PSR are substantially lower than the maximum statutory sentencing exposure of 100 years estimated by Mr. Sterritt's Former Counsel in their November 1, 2023 letter. Moreover, Mr. Sterritt's advisory Guidelines range calculated in the PSR of 292 to 365

---

[20] The Guidelines calculation in the PSR is not final or binding on the Court.

months is identical to the second Guidelines estimate of 292 to 365 months provided in Former Counsel's November 1, 2023 letter, an estimate of the "Government's Likely View of the Guidelines if the Client Pleads 'Open' – to All Counts" (Former Counsel's Letter at 8), and is substantially lower than the "worst case" Guidelines estimate provided in the November 1, 2023 letter of 360 months to life (*id.* at 10).

Mr. Sterritt's motion thus presents a situation where he was erroneously advised by defense counsel of an *overstated* sentencing exposure before he rejected a plea offer. This is the opposite of the situation faced by the defendant in *Gordon* (who was erroneously advised by defense counsel of an *understated* sentencing exposure before he rejected a plea offer), and the opposite conclusion obtains. The overstated sentencing exposure of which Mr. Sterritt was advised undermines (rather than supports) Mr. Sterritt's claim that he would have accepted the Proposed Plea Agreement if properly advised, and therefore the overstated sentencing exposure cannot serve as objective evidence that would warrant a hearing on Mr. Sterritt's motion. *See, e.g.*, *Patterson*, 2012 WL 3866489, at *6–7 (finding no objective evidence because sentencing disparity provided "far too weak an inference to corroborate petitioner's *post hoc* claims that he would have pleaded guilty" and "the broader context in which petitioner chose to proceed to trial actually belies his claim"). The Court thus finds

81

that Mr. Sterritt has not provided objective evidence in support of his contention that he would have accepted the Plea Offer if properly advised, and therefore finds that an evidentiary hearing is not warranted.[21]

The unique benefits resulting from Mr. Sterritt's decision to plead guilty without an agreement support the Court's finding that he received constitutionally effective assistance in making his decision. Specifically, although Mr. Sterritt is now exposed to statutory maximum terms of incarceration on all five counts and is possibly exposed to higher financial penalties, by rejecting the Proposed Plea Agreement, he has retained his right to appeal any sentence imposed by this Court (whereas under the Proposed Plea Agreement, he could only appeal a sentence above the twenty-year statutory maximum for Count Two). He has also retained his right to present arguments regarding the calculation of the Guidelines in determining his advisory sentencing range (whereas the Proposed Plea Agreement required Mr. Sterritt to stipulate to the Government's Guidelines estimate). As to the Guidelines calculation, the November 1, 2023 letter by Former Counsel advised

---

[21] In addition to failing to show objective evidence that would warrant an evidentiary hearing, a hearing is also unnecessary because there is no dispute as to other pertinent facts. There is no dispute that Mr. Sterritt's Former Counsel advised him not to proceed to trial during their October 13, 2023 meeting at the MDC and again in Former Counsel's November 1, 2023 letter; that Mr. Sterritt ignored that advice and decided to proceed to trial; and that Mr. Sterritt changed his mind on the first day of trial after jury selection and decided to plead guilty to all counts without a plea agreement.

that Mr. Sterritt could advance non-frivolous arguments that the applicable loss amount for Guidelines purposes was between $550,000 and $1,500,000. By pleading guilty without an agreement, Mr. Sterritt preserved his right to advance loss amount arguments (whereas the Proposed Plea Agreement required him to stipulate to a loss amount of between $9,500,000 and $25,000,000). A rational defendant could have found that the receipt of the above benefits justified rejecting the Proposed Plea Agreement and to instead plead guilty to all counts of the Superseding Indictment without an agreement. Moreover, whether Mr. Sterritt pleaded guilty only to Count Two or to all counts of the Superseding Indictment, the Court may consider the conduct undergirding all counts as relevant conduct. *See* Guidelines § 1B1.2(c); *id.* § 1B1.3(a)(2); 18 U.S.C. § 3661; (Proposed Plea Agreement ¶ 2.)

Mr. Sterritt's reply cites *Raysor v. United States*, 647 F.3d 491 (2d Cir. 2011), but that case is readily distinguishable. In *Raysor*, the Government offered the defendant a plea agreement in which the Government would recommend a term of incarceration of 29 years. *Id.* at 493. The defendant rejected that offer and was tried, convicted, and ultimately sentenced to multiple life terms of imprisonment. *Id.* The defendant later challenged his conviction and sentence in a 28 U.S.C. § 2255 motion, arguing that his original counsel "failed to discuss with [him] the advisability of whether to accept or reject the government's plea offer." *Id.*

83

The defendant submitted an affidavit in support of his petition in which he stated in part that his original counsel "never conveyed to [the defendant] [counsel's] ultimate opinion as to the wisdom of the plea nor did he give any suggestions as to how to deal with the government's plea offer." *Id.* The Government responded to the petition and submitted the affidavit of original counsel, who stated simply that he "conveyed the government offer [*sic*] of 29 years to the defendant[, who] refused the offer." *Id.* at 493–94. The district court dismissed the petition based on its conclusion that the defendant failed to show prejudice. *Id.* at 494–95.

The Second Circuit in *Raysor* vacated with instructions to conduct an evidentiary hearing on remand. *Id.* at 496–97. The Second Circuit found that defendant's sworn statement that he would have accepted the plea offer if properly counseled, coupled with the substantial "disparity between the sentence offered in the plea agreement—29 years—and the sentence he actually received—multiple life terms," were together sufficient to justify an evidentiary hearing on the question of prejudice. *Id.* at 496. The Second Circuit also found that an evidentiary hearing on counsel's performance was warranted because of the lack of detail in the record concerning counsel's advice regarding the plea offer. *Id.* at 496–97 ("In particular, we do not know what, if anything, was communicated to [the defendant] regarding the likelihood of a substantially more severe sentence as a result of going to trial,

what original counsel believed as to the plea offer, or why original counsel did whatever he did."). The Second Circuit highlighted that defense counsel in *Raysor* was disqualified for a conflict of interest shortly after plea negotiations with the Government concluded. *Id.* at 493, 497.

*Raysor* is distinguishable for several reasons. First, as noted above, Mr. Sterritt has not yet been sentenced, so he cannot show a disparity between "the sentence offered in the plea agreement" and "the sentence he actually received." *Id.* at 496.

*Raysor* is also distinguishable because the record currently before the Court includes extensive, detailed evidence as to the analysis that Former Counsel provided concerning the Plea Offer and other scenarios. Both Mr. Sterritt and one of his Former Counsel, Mr. Mitchell, have provided sworn submissions, and those submissions in turn corroborate Former Counsel's November 1, 2023 letter to Mr. Sterritt, which acknowledged Mr. Sterritt's decision to reject the Plea Offer at their October 13, 2023 meeting. The November 1, 2023 letter, which Mr. Mitchell's declaration describes as "summariz[ing] [his and Ms. Carvlin's] advice," contains extensive analysis of the alternatives available to Mr. Sterritt at that time, including his likely Guidelines sentencing range if he were to have accepted the Plea Offer and a "[w]orst-case scenario" if he were to be convicted of all counts at trial, a probability that Former Counsel emphasized was likely.

Indeed, Former Counsel clearly advised Mr. Sterritt to plead guilty rather than risk being convicted at trial.  Thus, the record here is much more extensive than that in *Raysor* and permits the Court to resolve Mr. Sterritt's motion without an evidentiary hearing.

Finally, unlike in *Raysor*, Mr. Sterritt's Former Counsel were not disqualified due to a conflict of interest after plea negotiations.  Instead, approximately six months after Mr. Sterritt pleaded guilty without an agreement to all counts of the Superseding Indictment, the Court granted Former Counsel's request to be relieved due to a "complete breakdown of communication" between Mr. Sterritt and his Former Counsel.  (ECF No. 376.)

For the foregoing reasons, the Court finds that an evidentiary hearing on Mr. Sterritt's motion to withdraw his guilty plea is not warranted.

## II.  Rule 11(d)(2)(B) Factors

Rule 11 allows a defendant to withdraw a guilty plea, after his plea has been accepted by the Court but before sentencing, if he can show "a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  A defendant seeking such withdrawal "bears the burden of demonstrating both that there are valid grounds for withdrawal and that such grounds are not outweighed by any prejudice to the government." *United States v. Velissaris*, No. 23-6379-cr, 2024 WL 4502001, at *1 (2d Cir. Oct. 16, 2024) (quoting *United States v. Avellino*, 136 F.3d

249, 261 (2d Cir. 1998)); *accord United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (citation omitted).  The burden is a "stringent" one, *United States v. Grant*, No. 10-cr-431(CM), 2014 WL 4828469, at *7 (S.D.N.Y. Sept. 25, 2014) (quoting *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004)), reflecting society's "strong interest in the finality of guilty pleas" and the recognition that "allowing withdrawal of pleas . . . delays and impairs the orderly administration of justice," *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (citation omitted).  The decision of whether to grant or deny a Rule 11(d)(2)(B) motion is committed to the discretion of the district court.  *See, e.g.*, *Velissaris*, 2024 WL 4502001, at *1 ("We review the denial of a motion to withdraw a guilty plea for abuse of discretion." (citing *Juncal*, 245 F.3d at 170–71)).

### A.    Applicability of the Factors

The Government argues that the Court should deny Mr. Sterritt's motion due to the Government's urged application of the factors used by courts in considering Rule 11(d)(2)(B) motions, independent of the merits of Mr. Sterritt's ineffective-assistance claim, including his failure to show prejudice.  (*See* Opp. at 3–5.)  The Rule 11(d)(2)(B) factors include "(1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the

plea." *Velissaris*, 2024 WL 4502001, at *1 (quoting *United States v. Doe*, 537 F.3d 204, 210 (2d Cir. 2008)). Where the defendant fails to meet his burden of showing sufficient grounds to permit withdrawal, the Government need not prove it would be prejudiced. *See United States v. Thomas*, 651 F. Supp. 3d 685, 693 n.1 (S.D.N.Y. 2023) (citing *Gonzalez*, 970 F.2d at 1100; *Maher*, 108 F.3d at 1529).

The factors are applicable where a defendant seeks to withdraw his guilty plea based on a claim that the guilty plea itself was improper. *See Doe*, 537 F.3d at 208 (noting defendant's theory that prosecutor coerced defendant to plea). In this case, as noted above, Mr. Sterritt does not argue that the guilty plea that he entered on November 27, 2023 was improper, unknowing, involuntary, or unsupported by sufficient factual bases as to each of the five counts to which he pleaded guilty.

Where, as here, a defendant seeks to withdraw his guilty plea based solely on allegedly ineffective assistance of counsel, the Rule 11(d)(2)(B) factors are inapplicable. To conclude otherwise would result in a situation where a defendant, if he could (unlike Mr. Sterritt) establish a meritorious Sixth Amendment claim that he was denied the effective assistance of counsel at a critical stage of criminal proceedings, could still be denied relief because he waited too long to raise the claim, he did not assert his legal innocence, or because the Government would be prejudiced.

As noted above, in *Lafler v. Cooper*, the Supreme Court provided the standard by which lower courts should review a defendant's claim that ineffective assistance of counsel led to the rejection of a plea agreement that he now claims he would have accepted. *See Lafler*, 566 U.S. at 173 (citation omitted). The standard established in *Lafler* requires lower courts to evaluate such claims under the familiar two-prong *Strickland v. Washington* standard for ineffective assistance of counsel, described above. *See Lafler* at 162–63, 173–74 (citations omitted). *Lafler* does not include consideration of when a defendant challenged his guilty plea, whether he asserts a claim of legal innocence, and the extent of prejudice to the Government if a defendant is permitted to withdraw his guilty plea. *Lafler* instead requires an analysis of whether counsel's assistance to the defendant during plea negotiations was constitutionally deficient and, if so, whether the defendant was prejudiced as a result of that deficiency. In *Lafler*, the defendant had rejected a plea offer and was convicted at trial. *Id.* at 161. It was irrelevant whether the defendant asserted a claim of legal innocence. Indeed, *Lafler* presupposes that a plea-bargaining defendant is not legally innocent. *See id.* at 169 (expressly extending holding to "guilty" defendants); *Belfiore*, 473 F. Supp. 3d at 99–105 (denying *Lafler* claim based on finding that defendant failed to establish prejudice because he repeatedly proclaimed his innocence and "would have never agreed

to plead guilty" and, therefore, would not have accepted plea offer even if properly advised).

## B. The Factors Weigh Against Withdrawal

For the reasons set forth above, the Court finds that the Rule 11(d)(2)(B) factors do not apply to Mr. Sterritt's motion and therefore need not be analyzed. But even if the Rule 11(d)(2)(B) factors did apply to Mr. Sterritt's motion, the factors would clearly weigh against granting the motion. First, just over a year has passed between Mr. Sterritt's guilty plea on November 27, 2023 and his December 2, 2024 motion to withdraw it. If the Court were to credit Mr. Sterritt's assertion that he previously sought to withdraw his guilty plea at the same time he initially sought to proceed *pro se* (before later accepting the appointment of his eighth attorney in this action), then approximately eight months would have elapsed from when he pleaded guilty on November 27, 2023 to when he first mentioned his potential motion on August 1, 2024. In his reply, Mr. Sterritt now contends, contrary to the record in this case,[22] that he originally filed his motion to

---

[22] The record offers no support for Mr. Sterritt's claim that he filed a motion to withdraw his plea in June 2024. As noted above, Mr. Sterritt first alluded to a possible motion to withdraw his guilty plea in a letter dated August 1, 2024, although that letter does not itself contain such a motion. (*See* ECF No. 400.) Moreover, to the extent Mr. Sterritt may have attempted to submit a *pro se* motion in June 2024 when he was still represented by counsel, such hybrid representation is not permitted by the Second Circuit. *See United States v. Hage*, 74 F.4th 90, 93 (2d Cir. 2023) (Nardini, Cir. J., in chambers) (Although a defendant has a right to representation by counsel or to represent himself, "[a] defendant has . . . no right to 'hybrid' representation in which he is

withdraw his plea in June 2024, which would imply a delay of approximately six months. Whether the delay is six, eight, or twelve months, such a delay weighs against granting the motion. Courts have found significantly shorter delays weigh against granting a defendant's motion to withdraw his guilty plea. *See United States v. Dean*, 591 F. App'x 11, 14 (2d Cir. 2014) (four-month delay weighed against motion); *Thomas*, 651 F. Supp. 3d at 693 (same); *see also United States v. Kalichenko*, No. 14-cr-95(JFB), 2019 WL 3287976, at *4 (E.D.N.Y. July 22, 2019) (collecting cases).

The second factor, whether Mr. Sterritt claims to be legally innocent of the five charges to which he pleaded guilty, also weighs against granting the motion. Mr. Sterritt does not assert a claim of legal innocence. He instead argues that Former Counsel acted ineffectively in advising him when he was considering the Government's Proposed Plea Agreement. (Mot. at 2.) Moreover, during his November 27, 2023 plea allocution, Mr. Sterritt provided sworn statements that provided factual bases to support his guilt as to all five counts of the Superseding Indictment.

The third factor directs the Court to consider the potential prejudice to the Government that would be caused by the withdrawal of the plea. There is no burden on the Government to

---

represented by counsel but supplements his lawyer's work with selected *pro se* submissions." (citations omitted)).

show prejudice where, as here, the defendant has not shown sufficient grounds to justify withdrawal. *See United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011). Even so, if the Government were again forced to prepare for trial, previously estimated to be a multi-week trial involving multiple witnesses and voluminous exhibits, the Government would "be required to reconstruct its preparation for trial and prepare for testimony witnesses whose memories may have faded with time." (Opp. at 4; *see also* Nov. 21, 2023 Tr. at 3 ("THE COURT: . . . Does the Government and Defense still estimate that we are going to need three weeks for this trial? MS. EVANS: Yes, Your Honor.").) Preparing again for a trial that was scheduled to begin more than a year ago on November 27, 2023 would indeed be prejudicial and would weigh against granting the motion. *See United States v. Rampersant*, 704 F. Supp. 3d 373, 381 (E.D.N.Y. 2023) (finding Government would be prejudiced in preparing for trial of defendant on charges in indictment filed nearly three years before motion to withdraw guilty plea) (citing *United States v. Vega*, No. 07-cr-707(ARR), 2012 WL 1925876, at *11 (E.D.N.Y. May 24, 2012)).

Mr. Sterritt does not request a trial, but instead requests the benefit of the Proposed Plea Agreement. If the Court had found Mr. Sterritt's Sixth Amendment right to effective assistance of counsel were violated (which it was not), then the Court could exercise its discretion in fashioning an appropriate

remedy for such a violation. *See Lafler*, 566 U.S. at 171; *see also United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000) ("a finding of ineffective assistance requires a remedy specifically tailored to the constitutional error." (citing *Gordon*, 156 F.3d at 381)).

Here, the alleged constitutional defect rests not on Mr. Sterritt's November 27, 2023 guilty plea, but instead on his Former Counsel's assistance during plea negotiations in October 2023. An appropriate remedy for such an error, if it existed, would restore Mr. Sterritt to the circumstances that would have existed had he been properly advised. For example, the Court could sentence Mr. Sterritt as if he had entered into the Proposed Plea Agreement, *see Carmichael*, 216 F.3d at 228; *United States v. Williams*, 372 F.3d 96, 110–11 (2d Cir. 2004) (holding, based on finding of Sixth Amendment violation, defendant was "entitled to be resentenced 'to the terms he would have received had he been given proper legal advice'" (alteration adopted) (quoting *Carmichael*, 216 F.3d at 227)), or could permit Mr. Sterritt to withdraw his guilty plea and simultaneously direct the Government to reoffer the Proposed Plea Agreement. *See Lafler*, 566 U.S. at 171. Either of these alternatives would have the principal effect of limiting the maximum custodial sentence that the Court could impose to twenty years' imprisonment (the statutory maximum for Count Two) and would have other effects on the parties, including, presumably, a waiver

93

of Mr. Sterritt's rights to (i) dispute the Guidelines calculation in the Proposed Plea Agreement resulting in an advisory Guidelines range of 235 to 240 months imprisonment, (ii) appeal any sentence of imprisonment of twenty years or below, (iii) dispute the loss amount for purposes of the Guidelines and restitution, and (iv) dispute the minimum value of assets subject to criminal forfeiture.  If the case proceeded in this manner, then the Government would not need to prepare for a trial, but would instead continue to prepare for Mr. Sterritt's sentencing on a slightly different footing.  *See Day*, 969 F.2d at 47 (collecting cases showing a variety of remedies to constitutionally ineffective assistance during plea bargaining).  Though the Government would be prejudiced if it had to prepare for trial, the Court finds that the Government would not be prejudiced by continuing to prepare for sentencing, even if only on Count Two.

Considered together, the foregoing factors would clearly weigh against granting Mr. Sterritt's motion to withdraw his guilty plea.  Aside from the considerations already discussed, permitting Mr. Sterritt to withdraw his guilty plea would "undermine confidence in the integrity of our judicial procedures, increase the volume of judicial work, and delay and impair the orderly administration of justice."  *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (alterations adopted; revised for tense) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

94

Mr. Sterritt repeatedly filed *pro se* submissions while he was represented, requested new counsel multiple times, and waited to interpose a guilty plea until after the parties had briefed motions *in limine*, exchanged voluminous discovery, prepared for trial, and empaneled a jury and alternates.  Being represented by eight attorneys and preparing for a multi-week trial is expensive, but Mr. Sterritt did not bear that expense.  Those costs were instead borne by the public.  Moreover, scores of Mr. Sterritt's fellow citizens donated hours of their time to participate in voir dire for his trial and a panel of jurors and alternates were prepared to devote weeks of their lives to carefully hearing evidence and determining whether the Government met its burden of proving every element of each of the five charges beyond a reasonable doubt. Thus, the Court concludes that, if the Rule 11(d)(2)(B) factors were to be applied, the factors would weigh against permitting Mr. Sterritt to withdraw his guilty plea.

## III. Other Requests for Relief

### A.    Post-Waiver Request for Counsel

In his reply, Mr. Sterritt requests that the Court appoint counsel to represent him.  (*See* Reply ¶ 7 ("Accordingly, the Court should, at a minimum, schedule this matter for an evidentiary hearing, and appoint counsel to represent this Defendant.").)  As explained above, the Court denies Mr. Sterritt's request for an evidentiary hearing.  Thus, his request for counsel

for his motion to withdraw his guilty plea and for a hearing on the motion is also denied. *See United States v. Romano*, No. 15-922-cr, 2022 WL 402394, at *4–5 (2d Cir. Feb. 10, 2022) (upholding district court's denial of defendant's conditional request for counsel to assist in proceedings that would have ensued if the district court had granted his motion to set aside his plea because the district court instead denied his motion). The Court notes that after an extensive inquiry pursuant to *Faretta v. California*, 422 U.S. 806 (1975), this Court, on December 13, 2024, granted Mr. Sterritt's request to relieve his eighth attorney in this case and proceed *pro se* for his instant motion to withdraw his plea and for sentencing. (*See* Dec. 13, 2024 Tr. at 35 ("THE COURT: Do you also understand that if you do proceed *pro se* you will be, in effect, on your own in terms of the sentencing and in terms of your motion to withdraw your guilty plea[?] THE DEFENDANT: Yes, ma'am.").)

The Court next considers if counsel should be appointed for Mr. Sterritt' sentencing. "[W]hen a defendant who elected to proceed *pro se* later demands an attorney, there is broad consensus that, once waived, the right to counsel is no longer unqualified." *Romano*, 2022 WL 402394, at *4 (citing *United States v. Kerr*, 752 F.3d 206, 220 (2d Cir. 2014)). "[O]nce a defendant voluntarily and intelligently waives his right to counsel and elects to proceed *pro se*, the decision whether to grant or deny his post-waiver request for counsel is well within the discretion of the district

96

court." *Id.* (internal quotation marks omitted) (quoting *Kerr*, 752 F.3d at 221). A district court considering a post-waiver motion for new counsel should "inquire into the defendant's reasons for the request and fully explain on the record the grounds for its ultimate decision," although no formal inquiry or colloquy is required "where the rationales for the request and decision are apparent on the record." *Id.* (citing *Kerr*, 752 F.3d at 221–22.)

As set forth above, the Court finds that an evidentiary hearing on Mr. Sterritt's motion is not warranted. Thus, Mr. Sterritt's reply is instead construed to present a conditional request for counsel to assist in the sentencing proceedings that will now ensue with the denial of Mr. Sterritt's motion to set aside his plea. Despite his sworn statements at the *Faretta* hearing on December 13, 2024, unequivocally stating that he intended to proceed *pro se* in this action for purposes of his instant motion and for sentencing, Mr. Sterritt now appears to request that this Court appoint a ninth attorney to represent him. In accordance with the Second Circuit's decision in *Kerr*, Mr. Sterritt must inform the Court of the reasons for his request for the appointment of counsel. *See Kerr*, 752 F.3d at 221 ("we will generally require a district court faced with a post-waiver motion for new counsel to inquire into the defendant's reasons for the request and fully explain on the record the grounds for its ultimate decision"). Therefore, the Court directs Mr. Sterritt to

state the reasons for his request for counsel by causing a letter
stating such reasons to be filed on the docket in this case as
soon as possible and in no event later than March 28, 2025.

> **B.** **Objections to the Presentence Investigation Report and the Probation Department's Guidelines Calculation**

Prior to being relieved, Mr. Sterritt's former attorney,
Mr. Cutler, filed objections (ECF No. 413) to the PSR prepared by
the Probation Department.  In his *pro se* submissions in support of
his motion to withdraw his guilty plea, Mr. Sterritt appears to
misapprehend that the factual statements and Guidelines
calculation provided by the Probation Department in the PSR, filed
August 30, 2024, are somehow final and binding on the Court.  For
example, in his supplemental submission, Mr. Sterritt writes that
"the open plea counsel advised Defendant [to] enter has exposed
him to 75 years imprisonment, and the recommended sentencing range
is 292 to 365 months [*sic*]."  (Suppl. Mot. at 2.)  Mr. Sterritt
appears to refer to paragraph 175 of the PSR, which calculates an
advisory Guidelines range of imprisonment of 292 to 365 months, a
range that is substantially, although not entirely, the result of
a calculated loss amount, for Guidelines purposes, of
$117,022,576.61.  (ECF No. 407 ¶¶ 122, 175.)  In his reply, Mr.
Sterritt similarly writes that the PSR "demonstrates" that Former
Counsel "grossly misrepresent[ed]" that he "could conceivably
receive a much lower sentence by entering an open guilty plea."

(Reply ¶ 7.)  During a December 13, 2024 conference, Mr. Sterritt stated that he "was confused on the loss amounts" contained in the PSR.  (Dec. 13, 2024 Tr. at 37.)

The PSR's factual statements and Guidelines calculations are not final or binding on the Court because, as Mr. Sterritt was advised, the Court must independently calculate the advisory Guidelines.  Moreover, the parties have had ample time to file objections to the PSR in accordance with Rule 32 and this Court's orders.  Indeed, as noted above, one of Mr. Sterritt's former attorneys, Mr. Cutler, filed objections to the PSR on September 23, 2024 (ECF No. 413).  As the Court previously advised Mr. Sterritt at his change-of-plea hearing on November 27, 2023, although the Court must independently calculate his Guidelines, the Guidelines are advisory and do not bind the Court.  (*See* Nov. 27, 2023 Plea Tr. at 34); *Molina-Martinez*, 578 U.S. at 193 ("Although the district court has discretion to depart from the Guidelines, the court 'must consult those Guidelines and take them into account when sentencing.'" (quoting *United States v. Booker*, 543 U.S. 220, 264 (2005))).[23]

Mr. Sterritt's *pro se* objections to the PSR were due on December 19, 2024, but he filed none.  (*See* Dec. 13, 2024 Min.

---

[23] In other words, the Court may, if warranted, vary upward or downward from a defendant's calculated Guidelines sentencing range.  At this time, the Court expresses no opinion on whether an upward or downward variance would or would not be justified when determining Mr. Sterritt's sentence.

Entry.)  The Court directed Mr. Sterritt to advise the Court by December 19, 2024 whether he wanted the Court to consider his counseled objections to the PSR, which were submitted on September 23, 2024 (ECF No. 413).  Again, Mr. Sterritt did not respond or advise whether the Court should consider the objections to the PSR submitted by his former attorney, Mr. Cutler.  Despite Mr. Sterritt's apparent disagreement with the PSR's factual findings and/or Guidelines calculation, Mr. Sterritt has submitted no objections other than his counseled objections.  The Court will *sua sponte* extend Mr. Sterritt's time to submit additional objections to the PSR and Probation's December 4, 2024 and March 4, 2025 addenda (*see* ECF No. 423 (first addendum to the PSR); ECF No. 443 (second addendum to the PSR)), and his time to advise the Court whether he wishes for the Court to consider his counseled objections to the PSR up through and including April 10, 2025.

## CONCLUSION

For reasons noted above, the Court **ORDERS** as follows:

▪ Mr. Sterritt's motion to withdraw his guilty plea is respectfully **DENIED**.

▪ Mr. Sterritt's request that the Court appoint counsel to represent him at an evidentiary hearing on the motion to withdraw his guilty plea is respectfully **DENIED** as moot.

▪ If Mr. Sterritt now intends to request that this Court appoint a ninth attorney as defense counsel to represent him in this action for sentencing, he must inform the Court of the reasons for his request to appoint counsel by causing a letter stating such reasons to be filed on the docket in this case as soon as possible and in no event later than **March 28, 2025.**

- By **April 10, 2025,** Mr. Sterritt (or his counsel) shall file a letter informing the Court of any additional objections to the Presentence Investigation Report filed on August 30, 2024 (ECF No. 407), to Probation's December 4, 2024 addendum (ECF No. 423), or to Probation's March 4, 2025 addendum (ECF No. 443), or that he has no such objections, and advising the Court if he wishes for the Court to consider the objections filed by his former attorney, Mr. Cutler, on September 23, 2024 (ECF No. 413).

- Mr. Sterritt's sentencing is scheduled for **May 15, 2025 at 11:00 a.m.** in Courtroom 6B South.  Mr. Sterritt shall file his sentencing submissions by April 17, 2025; the Government shall file its submissions by April 24, 2025; Mr. Sterritt shall file his reply, if any, by May 1, 2025.  The Court respectfully requests that the Government serve Chambers with two bound courtesy copies of all sentencing materials via FedEx or messenger service and serve the Probation Department with one courtesy copy of all sentencing materials.

- The Government is respectfully directed to serve Mr. Sterritt with a copy of this Memorandum and Order and both addenda to the PSR (ECF Nos. 423 & 443) and to note service on the docket by March 7, 2025.

**SO ORDERED**

Dated:    March 6, 2025
          Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

101